**Douglas R. FAVELL, Jr., Gilles Marotte, Frederick E. Speck, Francis W. Speer, Garnet E. Bailey, Plaintiffs,**

**v.**

**UNITED STATES, Defendant.**

**Nos. 525–76, 531–76, 42–77, 43–77 and 122–77.**

United States Claims Court.

Nov. 27, 1990.

Charles L. Abrahams, La Mesa, Cal., attorney of record, for plaintiffs.

Benjamin C. King, Jr., Tax Div., Dept. of Justice, Washington, D.C., with whom was Shirley D. Peterson, Asst. Atty. Gen., attorneys of record, for defendant.

## ORDER

HORN, Judge.

On October 21, 1985, the plaintiffs in the above-captioned cases filed a Motion for Partial Summary Judgment. Then on April 24, 1986, the defendant filed a response to Plaintiffs' Motion for Partial Summary Judgment, as well as a Cross–Motion for Partial Summary Judgment. On November 3, 1986, the plaintiffs responded to the Defendant's Cross–Motion for Partial Summary Judgment. Oral argument on Plaintiffs' Motion for Partial Summary Judgment and the Defendant's Cross–Motion for Summary Judgment was scheduled and heard. Ultimately, based on the Motion for Partial Summary Judgment, the Cross–Motion for Partial Summary Judgment, and the responses submitted to each, as well as the numerous other documents, filed with the court, and the oral argument held before this judge, the court issued an Opinion, whereby, the Plaintiffs' Motion for Partial Summary Judgment was denied and the Defendant's Cross–Motion for Partial Summary Judgment was granted. *Favell v. United States*, 16 Cl.Ct. 700 (1989).

Currently before the court are Plaintiffs' Petition for Certification to Appeal the Decision issued by the court granting defendant's Motion for Partial Summary Judgment, the Defendant's Opposition to Plaintiffs' Motion for Certification, and the Plaintiffs' Reply to Defendant's Opposition to Plaintiffs' Petition for Certification. For the reasons discussed more fully below, the court, hereby, DENIES the Plaintiffs' Motion for Certification to appeal the Decision of this court, dated April 26, 1989.

## BACKGROUND

The five, above-captioned, test cases,[1] which are part of a group of cases referred to as the "hockey player tax refund cases," were brought in this court by professional hockey players (in some cases, together with their spouses), claiming the refund of income tax monies, allegedly overpaid. Each plaintiff's claimed amount includes the alleged overpayment of taxes to the defendant, which correspond to certain claimed, and originally disallowed, tax deductions, as well as an amount which each plaintiff has computed to be the correct refund figure. The plaintiffs' position concerns the exclusion of gross income dollars in accordance with the allocation of income according to a formula discussed later in this Order. Similar deduction claims by hockey players were considered, by the United States Tax Court and the United States Courts of Appeals for the Second and Fourth Circuits, in the *Stemkowski* case, *Stemkowski v. Commissioner*, 76 T.C. 252, 299–303 (1981), *aff'd in part and rev'd in part*, and *remanded*, 690 F.2d 40,

---

1. Prior to these cases being reassigned to this judge, the five cases dealt with in the Opinion were consolidated and represented to this court to be supposed test cases on the relevant legal issues, which could lead to resolution of the entire hockey player tax refund docket. The parties, apparently, had made a similar representation in prior litigation on closely related issues to at least one other court. Judge Oakes of the Second Circuit wrote the following concerning *Stemkowski* being a "supposed test case":

   We say 'supposed' because the parties agreed that this case and *Hanna v. Commissioner* [76 T.C. 252 (1981)] (T.C. No. 3485–76), which were consolidated for briefing, trial, and opinion, would dispose of 41 other hockey players' cases before the Tax Court. But *Hanna* is currently on appeal to the Fourth Circuit (No. 81–2122), which may take a different view of one or more aspects of the case than we do. It is not clear from the record whether the consolidation agreement was intended to ap-

   ply only to disposition in the Tax Court, or to proceedings beyond the Tax Court as well. In any event, the Tax Court entered an order suspending decisions in the 41 other cases until the decisions in the instant case and *Hanna* have become final.

   *Stemkowski v. Commissioner*, 690 F.2d 40, 42 (2d Cir.1982). This representation was also noted by the Fourth Circuit in *Hanna v. Commissioner*, 763 F.2d 171, 171–72 (4th Cir.1985).

   In the case at bar, the parties represented that resolution of the income allocation issue, as it pertains to the contract interpretation issue of the five test cases, would resolve the remaining cases filed in the United States Claims Court. Such, however, has not been the result of this court's disposition of the partial summary judgment motions. In fact, even following disposition of the income allocation issue, the plaintiffs' attorney has continued to file brand new, related complaints on behalf of additional hockey player plaintiffs.

**134**

46–47 (2d Cir.1982), *on remand,* 82 T.C. 854 (1984), and *aff'd in part and rev'd in part, Promotions, Ltd. v. Brooklyn Bridge Centennial Comm.,* 763 F.2d 173 (4th Cir.1985), and the *Hanna* case, *Hanna v. Commissioner,* 76 T.C. 252 (1981), *aff'd in part and rev'd in part,* and *remanded,* 763 F.2d 171 (4th Cir.1985). The first hockey player tax refund case was filed in December of 1976,[2] and is not one of these consolidated five cases.

The five above-captioned cases were originally filed before this court's predecessor, the United States Court of Claims, more than a decade ago. The Complaints were filed on December 20, 1976 for docket Nos. 525–76 and 531–76, January 21, 1977 for docket Nos. 42–77 and 43–77, and March 3, 1977 for docket No. 122–77. Subsequent to the enactment of the Federal Courts Improvement Act of 1982, Pub.L. No. 97–164, 96 Stat. 25, the United States Claims Court inherited cases pending before the United States Court of Claims, including these five cases and the other related hockey player cases. The above-captioned cases were originally assigned to the Honorable Philip R. Miller, along with the then 189 related cases.

Throughout the history of these five cases, and the related cases, they have been plagued by years of delays, as a result of the multiplicity of the plaintiffs, the enormous number of supporting documents filed in the cases, especially the pounds of reading material filed by the plaintiff, by the numerous and lengthy requests made by both parties for extensions of time to file motions and to prepare for the trial scheduled by Judge Miller, and by the repeated failure of plaintiffs' counsel to file

documents in accordance with the Rules of the United States Claims Court (RUSCC). By Order dated April 1, 1985, prior to the scheduled trial, these five plaintiffs were chosen as representative cases, and counsel were asked to submit briefs on an issue common to most of the then pending hockey player tax cases. As stated in the April 1, 1985 Order, the plaintiffs were to file a motion for summary judgment, followed by a possible cross-motion to be filed by the defendant, on the following issue: whether, as a matter of law (Treasury Regulations 861–4(b), Treas.Reg. § 1.861–4(b) (1969)), the plaintiffs, who are non-resident aliens, are entitled to exclude from United States tax liability, proportionate income payments allegedly attributable to activities in which they took part during the off-season in Canada (denominated the income allocation or exclusion issue).[3] In accordance with the parties' representations and written dispositive motions, the specific deduction claims were not at issue in the summary judgment proceedings. The dispute between the parties focused on the total number of days for which a player should receive compensation under the terms of the National Hockey League Standard Player's Contract and World Hockey Association Uniform Player's Contract.

In essence, the parties disagreed as to the denominator of the time basis formula. The plaintiffs contended that the Standard Player's Contracts contemplate compensating the player for off-season services, and that, therefore, the off-season period should be included in the time basis formula. The defendant, however, argued that the standard player's contracts at issue do not contemplate compensating the hockey

**2.** The first hockey player tax refund case, *William Barry Ashbee and Donna Ashbee v. United States,* docket No. 515–76, filed in 1976, was followed by 22 other cases filed that same year, 101 cases filed in 1977, 29 cases filed in 1978, none filed in 1979, 8 filed in 1980, another 8 filed in 1981, 19 filed in 1982, 3 filed in 1983,

none filed in 1984 or 1985, 4 filed in 1986, 2 filed in 1987, none filed in 1988, 32 filed in 1989, and 1 in 1990, for a total of 230.

**3.** For ease of understanding, allocation of income in accordance with the regulation can be reduced to the following "time basis" formula:

$$\frac{\text{Number of days of performance services within the United States}}{\text{Total number of days of performance of services for which hockey player is compensated}} \times \text{Total contract compensation} = \text{Amount included in United States taxable income.}$$

player for off-season activities and that the proper income allocation formula should not include the off-season period. Because the parties disagreed on the components to be included in determining the proper income allocation formula, the question before this court was whether or not the Standard Player's Contracts at issue compensated the hockey player for off-season activities, which would in turn allow the off-season period to be included in the time basis or income allocation formula, and, thereby, reduce the hockey player's gross taxable United States income. Also included in the issue was whether or not the players' contracts obligate them to maintain a level of physical condition as a condition of the contract or a promise of performance under the contract.

The plaintiffs contended that the player's contracts, both the National Hockey League and World Hockey Association, require the performance of off-season conditioning programs and that such off-season activities should be considered compensated contractual obligations. Plaintiffs argued that the need to maintain their level of physical conditioning during the off-season is a requirement to perform services during the season. Plaintiffs also relied on the World Hockey Association Uniform Player's Contract, which was supposedly modeled after the National Hockey League Contract, and specifically, on paragraph 2.5 of that contract in which the player agrees "[t]o give his best services, best performance and loyalty to the club both in and out of season."

The defendant, however, argued that the contractual references to the player's requirement to maintain a level of physical condition is a contractual condition, not a promise to perform services. As such, defendant contended that the player does not receive his salary, pursuant to paragraph 19 of the contract, for the performance of any off-season exercise program which, when performed by the player, merely enables the player to maintain a desired minimum level of physical condition adequate to compete in the professional sport of hockey.

The underlying issue before the court, which was articulated somewhat differently by both parties,[4] required a determination, as a matter of law, as to whether conditioning programs, fitness exercises and similar activities, engaged in by the plaintiffs, during the off-season, outside the United States, should be viewed as contractual conditions, or labor or services required to be performed under the Standard Player's Contracts at issue.

According even to the plaintiffs' attorney as represented throughout these proceedings, and as recently as at a status conference with this court on July 2, 1990, it was the understanding of the parties, and of Judge Miller, that, once the exclusion issue was resolved, then the parties could settle all the outstanding cases. Unfortunately, as plaintiffs' counsel alluded to at several conferences before this court, he refused to talk settlement and to abide by this understanding after receiving decisions finding for the defendant and after he ran into legal difficulties of his own, on issues which he believes were related to this case.

On October 21, 1985, the plaintiffs filed the Motion for Partial Summary Judgment, together with four separately bound volumes of documents and testimony from a trial held earlier in the United States Tax Court.[5]

4. By motion and cross-motion for partial summary judgment, the parties requested the determination of the "income allocation issue" which is common to these five and to most of the other pending hockey player refund tax cases. As stated by the plaintiffs, the issue is: "[a]re plaintiffs entitled to the exclusion on the time basis pursuant to Regulation Section 1.861–4(b)–2 [Treas.Reg. § 1.861–4(b)(1969)] for services performed in Canada as a matter of law because their contracts expressly state the Plaintiffs are compensated for such services." The defendant

stated the issue in its response and cross-motion as "[w]hether the salary received by professional hockey players under standard player's contracts was paid, in part, for labor or services performed during the off-season."

5. The plaintiffs in the Tax Court consolidated action had not prevailed on the income allocation issue which was also submitted to this court. The single Tax Court opinion for both cases was appealed by each of the plaintiffs to different circuit courts of appeals. The two

On April 24, 1986, following several additional motions for extensions of time made by both parties, the defendant filed a response to Plaintiffs' Motion for Partial Summary Judgment and a Cross–Motion of the United States for Partial Summary Judgment, together with a Statement of Genuine Issues and Proposed Findings of Uncontroverted Facts.

On July 21, 1986, upon the retirement of the Honorable Philip R. Miller, these five cases, as well as the other hockey player tax refund suits then pending before this court, were reassigned to this judge.

On November 3, 1986, after this court had granted several more extensions of time to the plaintiffs, the plaintiffs responded to the Defendant's Cross–Motion for Partial Summary Judgment and made a Motion to Strike the Affidavit of defendant's attorney, Gilbert Rubloff. The Rubloff affidavit had been submitted by the defendant, on April 24, 1986, in support of its Cross–Motion for Partial Summary Judgment, together with a formal response to the plaintiffs' motion. Plaintiffs' response to the Defendant's Cross–Motion, filed on November 28, 1986, was accompanied by three volumes of documents and affidavits or declarations, as well as certified copies of the testimony taken in the *Stemkowski* and *Hanna* consolidated trial in the United States Tax Court.

Oral argument on the Plaintiffs' Motion for Partial Summary Judgment and the Defendant's Cross–Motion for Summary Judgment was scheduled and heard. At the oral argument, plaintiffs' counsel reiterated the Motion to Strike the Affidavit of defendant's attorney, Gilbert Rubloff. Defendant had previously responded to Plaintiffs' Motion to Strike the Affidavit of Gilbert Rubloff in papers filed on December 2, 1986. At the hearing, Mr. Rubloff, representing the defendant, stated that, for purposes of disposing of the present motion and Cross–Motion for Partial Summary Judgment, only any factual disagreements were inconsequential. Mr. Rubloff, on behalf of the defendant, stated that the court, therefore, should proceed and accept plaintiffs' version of the facts as submitted, solely for the purposes of deciding the summary judgment motion. As part of the defendant's agreement to accept plaintiffs' version of the relevant facts, the court denied the Plaintiffs' Motion to Strike the Tax Court petitions of the plaintiffs in *Stemkowski v. Commissioner,* 76 T.C. at 252, and *Hanna v. Commissioner,* 76 T.C. at 252, which was submitted by the defendant in response to the Motion to Strike the Affidavit of Mr. Gilbert Rubloff.

This court issued an Opinion which agreed with the United States Court of Appeals for the Second Circuit, in *Stemkowski v. Commissioner,* 690 F.2d at 46, that fitness is a condition of the hockey player's employment. In *Stemkowski v. Commissioner,* Judge Oakes, writing for the Court of Appeals for the Second Circuit, in interpreting the National Hockey League Standard Player's Contract, held that the contract does not compensate the hockey player for off-season activities. The Court of Appeals held that the Standard Player's Contract compensates the hockey player for the time period which includes the regular season championship games, the playoff and cup games, as well as the training camp exercises. However, "[t]he off-season is not covered by the contract." *Id.* The Court of Appeals added that because the claimed off-season activities may reasonably have been related to the contract compensated obligation, playing professional hockey, if substantiated, these expenses might be deductible from United States taxable income. *Id.* In the context of the issue submitted for disposition by motions for partial summary judgment, it was this court's determination that the only proper construction of the Standard Player's Contracts and the Uniform Player's Contract is one which is consistent with the Second Circuit's interpretation that the off-season is not covered by the

courts of appeals partially affirmed and partially reversed both cases. *Stemkowski v. Commissioner,* 76 T.C. 252 (1981), *aff'd in part, rev'd in part,* and *remanded,* 690 F.2d 40 (2d Cir.1982), and *Hanna v. Commissioner,* 76 T.C. 252 (1981), *aff'd in part, rev'd in part,* and *remanded,* 763 F.2d 171 (4th Cir.1985), as is discussed more fully below.

contract. The United States Court of Appeals for the Fourth Circuit had indicated that: "Our review of the record in this litigation leads us to agree with each and all of the views and holdings of the Second Circuit." *Hanna*, 763 F.2d at 172.

This court found that contract promises and conditions are both means by which the parties to a contract bring about certain desired action of another party. A. Corbin, *Contracts* § 633 (1950). The court pointed out that a contractual condition is to be distinguished from a promise, obligation, or covenant, in that a condition creates no right or duty in and of itself, but merely acts as a limiting or modifying contract provision. "A condition is an event, not certain to occur, unless its non-occurrence is excused, before performance under a contract becomes due." Restatement (Second) of Contracts § 224 (1981). If a condition does not occur, whether through breach or other cause, the party fails to meet the condition, and acquires no right to enforce the promise. A contractual promise or obligation, on the other hand, raises a duty to perform a service and its breach subjects the promisor to liability and damages, but does not necessarily excuse performance by the other contracting party. *United States v. Schaeffer*, 319 F.2d 907 (9th Cir.1963), *cert. denied*, 376 U.S. 943, 84 S.Ct. 798, 11 L.Ed.2d 767 (1964).

Based on a mountain of material submitted by the parties, well accepted legal treatises, and persuasive case authority, the court found that the requirement to arrive at training camp in good physical condition was in the nature of a contractual condition and not an obligation or promise on the part of the player. Consequently, the court denied the Plaintiffs' Motion for Partial Summary Judgement and granted the Defendant's Cross–Motion for Partial Summary Judgment.

After the court's Opinion was issued, the plaintiffs, Douglas R. Favell, Jr., Gilles Marotte, Frederick E. Speck, Francis W. Speer, and Garnet E. Bailey, petitioned the court, pursuant to Federal Rules of Appellate Procedure 54(b) [6] or, in the alternative, pursuant to 28 U.S.C. § 1292(b) (1988), for certification to appeal the interlocutory order entered April 26, 1989 by this judge in the United States Claims Court, which denied Plaintiffs' Motion for Partial Summary Judgment and granted the Cross–Motion of the United States for Partial Summary Judgment. The defendant filed an Opposition to Plaintiffs' Petition for Certification. Plaintiffs then filed their Reply to Defendant's Opposition to Plaintiffs' Petition for Certification on July 7, 1989.

Throughout the course of the proceedings in this court, plaintiffs' counsel has either failed to respond in a timely fashion, failed to respond altogether to motions filed by the defendant, or to court Orders, or has attempted to file disorganized documents not in conformity with the Rules of the Claims Court (RUSCC). In an act of generosity, on July 2, 1990, the court gave Mr. Abrahams one last chance to remedy any and all deficiencies in the filings in the related hockey player cases. With both counsel present, the court painstakingly reviewed the status of each of the hockey player cases so that Mr. Abrahams could complete his responsibilities with respect to each plaintiff.[7]

Even after the status conference, Mr. Abrahams did not properly file his responsive papers, nor did he indicate to the court in which instances he had chosen not to file, for tactical or other reasons. Moreover, some of the papers plaintiffs did file

6. The court initially noted that Rule 54(b) of the Federal Rules of Appellate Procedure does not exist, and, moreover, that 28 U.S.C. § 1292(b) (1988) is not applicable to this court, but that 28 U.S.C. § 1292(d)(2) (1988) is the pertinent section.

7. Typical of this case, in which there has been a lot of paper filed, and there is frequently concurrent activity on several fronts at once, the court is also currently working on defendant's Motion for Partial Dismissal, and the motion of the Stemkowski plaintiffs, seeking to relieve Mr. Abrahams as their counsel, filed October 4, 1990. Although not directly relevant to the outcome of the request for certification, all the activity in these 230 cases must be reviewed as related for the purpose of managing the entire hockey player, tax refund, case docket.

were returned to counsel for failure to conform to the Rules of the Claims Court.

The court has waited until after July 31, 1990, the date set for Mr. Abrahams to correct errors in his pleadings and to respond to outstanding and long overdue motions, before addressing each of the outstanding motions in the case. It was the court's hope that plaintiffs' counsel would be able to fix the outstanding filing deficiencies and help bring some order to the proceedings. Unfortunately, he has provided little assistance to the court, and the pleadings in this case remain in disarray.

Turning, first to the Certification request, initially the court notes that in his Motion for Certification, plaintiffs' counsel cited to what he denominates "Federal Rules of Appellate Procedure 54(b)." In fact, the Federal Rules of Appellate Procedure include only 48 rules, with an Appendix of Forms, which includes four forms. No Rule 54(b) of the Federal Rules of Appellate Procedure exists.

Again in an attempt not to penalize, unfairly, Mr. Abrahams' clients because of mistakes of counsel, the court has construed the petition as if it sought review in accordance with RUSCC 54(b), which is identical to the Federal Rules of Civil Procedure Rule 54(b), and provides:

(b) Judgment upon Multiple Claims or Involving Multiple Parties. When more than one claim for relief is presented in an action, whether as a claim, counter claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all parties.

Plaintiffs' counsel also errs when he cites to 28 U.S.C. § 1292(b), which governs actions in the United States District Courts. The language of § 1292(b), however, is virtually identical to 28 U.S.C. § 1292(d)(2) (1988), which governs interlocutory review by the United States Claims Court. Presumably, plaintiffs' counsel would not object if the court converted his cite and assumed that he chose to utilize 28 U.S.C. § 1292(d)(2), which provides:

When any judge of the United States Claims Court, in issuing an interlocutory order, includes in the order a statement that a controlling question of law is involved with respect to which there is a substantial ground for difference of opinion and that an immediate appeal from that order may materially advance the ultimate termination of the litigation, the United States Court of Appeal for the Federal Circuit may, in its discretion, permit an appeal to be taken from such order, if application is made to that court within ten days after the entry of such order.

Counsel also cites to 28 U.S.C. § 1291 (1988), which provides:

The courts of appeals shall have jurisdiction of appeals from all final decisions of the district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, except where a direct review may be had in the Supreme Court.

## DISCUSSION

Pursuant to Rule 54(b) of the Rules of the United States Claims Court (RUSCC) and 28 U.S.C. § 1291, the plaintiffs have asked this court to reduce the court's April 26, 1989 Opinion to a final judgment; or, in the alternative, pursuant to 28 U.S.C. § 1292(d)(2), to certify same to the United States Court of Appeals for the Federal Circuit. Plaintiffs argue that the Opinion issued by this court on April 26, 1989, *Favell v. United States*, 16 Cl.Ct. 700

(1989), involved controlling questions of law, with respect to which there are substantial grounds for difference of opinion, and that an immediate appeal may materially advance the termination of the litigation. The court disagrees, and declines to reduce the Opinion to a final judgment or to certify the issue to the appellate court at this time. Therefore, for the reasons delineated below, plaintiffs' Motion, in its entirety, is, hereby, DENIED.

To prevail and to obtain the relief plaintiffs seek in this court, the interlocutory order of April 26, 1989 either must be converted to a final judgment to meet the requirements of RUSCC 54(b) or it must be certified pursuant to the standard set forth in 28 U.S.C. § 1292(d)(2) (1988).

The Final Judgment Rule

■ In the federal courts, a final judgment must have been entered in a case by a lower court before a right of appeal attaches. This guiding principle first appeared in the Judiciary Act of 1789. *Brown Shoe Co. v. United States*, 370 U.S. 294, 306, 82 S.Ct. 1502, 1513, 8 L.Ed.2d 510 (1962) (citing Section 22, 1 Stat 84, in its present form, 28 U.S.C. § 1291). With only a temporary exception, not applicable here, finality continued to be a prerequisite to appealability until the creation of the courts of appeals by the Evardes Act in 1891. 9 J. Moore, B. Ward, & J. Lucas, Moore's Federal Practice, para. 110.06 (2d ed. 1989). The requirement has remained a cornerstone of the appellate process in the federal courts, and is, today, embodied in 28 U.S.C. § 1291 (1988).

■ While it is easy to identify the final judgment rule and to trace its history, it is difficult to formulate a precise definition of what constitutes a final judgment. This court, as well as others, have frequently held that the test is a pragmatic one. *See Brown Shoe Co.*, 370 U.S. at 306, 82 S.Ct. at 1513; *United States v. Burnett*, 262 F.2d 55 (9th Cir.1958). The cases, moreover, are not altogether consistent.[8] The traditional test, most commonly enunciated, is that: A final decision, generally, is one which ends the litigation on the merits and leaves nothing for the court to do but to execute the judgment. *See Catlin v. United States*, 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945) (citing *St. Louis, I.M. & S.R. Co. v. Southern Express Co.*, 108 U.S. 24, 28, 2 S.Ct. 6, 8, 27 L.Ed. 638 (1883)).[9] Or as the Sixth Circuit has said: "A final judgment is one which disposes of the whole subject, gives all the relief that was contemplated, provides with reasonable completeness, for giving effect to the judgment and leaves nothing to be done in the cause save superintend, ministerially, the execution of the decree." *Louisa v. Levi*, 140 F.2d 512, 514 (6th Cir.1944).

Perhaps the elusiveness of a precise definition of "final judgment" stems from the competing interests which the rule is designed to serve. The historic rule in the federal courts has always tried to limit piecemeal disposal of litigation and permitted appeals only from final judgments, except in those special instances covered by statute. 9 J. Moore, B. Ward, & J. Lucas, Moore's Federal Practice, para. 110.07 (2d ed. 1989) (citing Advisory Committee Note of 1946 to amended Rule 54(b)). The basic rationale of the finality rule is conservation of judicial resources. Frequent appeals

**8.** Supreme Court Opinions, over the years, have addressed the issue of finality. For example, "That we cannot devise a form of words that will settle this recurrent problem seems certain ..." *Dickinson v. Petroleum Conversion Corp.*, 338 U.S. 507, 508, 70 S.Ct. 322, 94 L.Ed. 299 (1950); "[f]inal in the context of appealability is sometimes an 'abstruse and infinitely uncertain term.'" *Will v. United States*, 389 U.S. 90, 108, 88 S.Ct. 269, 280, 19 L.Ed.2d 305 (1967) (concurring opinion); and "[p]robably no question of equity practice has been the subject of more frequent discussion in this court than the finality of decrees ... The cases, it must be conceded, are not altogether harmonious." *McGourkey v. Toledo & O.C.R. Co.*, 146 U.S. 536, 544–45, 13 S.Ct. 170, 172, 36 L.Ed. 1079 (1892).

**9.** *Catlin v. United States*, 324 U.S. 229, 65 S.Ct. 631, 89 L.Ed. 911 (1945), was superseded by a statutory revision of 9 U.S.C. § 15, which deals with arbitration proceedings, and, therefore, is not relevant to the instant case. The change was described in *Thomson McKinnon Securities, Inc. v. Salter*, 873 F.2d 1397, 1398–99 (11th Cir. 1989), which cited six instances in which orders, not filed within the meaning of 28 U.S.C. § 1291, are appealable, nonetheless.

during pending cases in the lower courts would unnecessarily protract litigation, raise the costs of litigation, and forestall the ultimate resolution of the cases, as well as provide opportunities for harassment of one party by his opponent. Justice Frankfurter elaborated these thoughts and stated the policy of finality in *Cobbledick v. United States:*

> Finality as a condition of review is an historic characteristic of federal appellate procedure. It was written into the first Judiciary Act and has been departed from only when observance of it would practically defeat the right to any review at all. Since the right to a judgment from more than one court is a matter of grace and not a necessary ingredient of justice, Congress from the very beginning has, by forbidding piecemeal disposition on appeal of what for practical purposes is a single controversy, set itself against enfeebling judicial administration. Thereby is avoided the obstruction to just claims that would come from permitting the harassment and cost of a succession of separate appeals from the various rulings to which a litigation may give rise, from its initiation to entry of judgment. To be effective, judicial administration must not be leaden-footed.

309 U.S. 323, 324–25, 60 S.Ct. 540, 541, 84 L.Ed. 783 (1940). In *Catlin v. United States,* Judge Rutledge added:

> The foundation of this policy is not in merely technical conceptions of 'finality.' It is one against piecemeal litigation. 'The case is not to be sent up in fragments'.... Reasons other than conservation of judicial energy sustain the limitation. One is elimination of delays caused by interlocutory appeals.

324 U.S. at 233–34, 65 S.Ct. at 633–34.[10] The requirement of finality also may help to ensure a more correct disposition of the merits of the case as a whole. After the proceedings at the trial court level are complete, the appellate court is in a position to assess the wisdom of individual particular interlocutory orders with heightened perspective, and to avoid the probability of a second appeal. *Taylor v. Board of Educ.,* 288 F.2d 600, 605 (2d Cir.1961).

A trial court's rulings on amendments to the pleadings, partial summary judgment or a court ruling which denies summary judgment, and other rulings made in advance of final disposition, except interlocutory orders appealable by leave under 28 U.S.C. § 1292(b) or (d), are generally subject to appellate review only after the entry of a final judgment which concludes the action. In the case at bar, the Opinion issued by this court on April 26, 1989, which granted partial summary judgment, was not of a nature, by its own terms, to end the litigation on the merits absent further action by the parties and the court, leaving nothing for this court to do but to execute a judgment. An Opinion which grants only a partial summary judgment cannot, by itself, terminate the litigation. Therefore, since this court's Opinion of April 26, 1989 was not a final determination of the merits of the case, an immediate appeal of the Opinion is only possible if it comes within an appropriate exception to the rule that for an appeal to be available, as a matter of right, there must be a final judgment on record.

RUSCC 54(b)

Although plaintiffs ask for certification of the issues disposed of in the April 26, 1989 Opinion of this court, in the alternative, plaintiffs move, under RUSCC 54(b), for the entry of a final judgment on the contract interpretation issues ruled on in the court's Opinion of April 26, 1989, which granted partial summary judgment to the defendant on the income allocation issue. Even after issuance of the court's Opinion, numerous questions, especially those related to individual deductions claimed by specific plaintiffs and related to what damages, if any, should be awarded to each such plaintiff, remain to be resolved. The Opinion was never intended by the parties or the court to be considered a "final" Opinion within the meaning of 28 U.S.C. § 1291 (1988). As stated in *Liberty Mut. Ins. Co. v. Wetzel,* 424 U.S. 737, 96 S.Ct.

---

**10.** See footnote 9, page 139.

1202, 47 L.Ed.2d 435 (1976), grants of partial summary judgment "are by their terms interlocutory ..., and where assessment of other relief remains to be resolved have never been considered to be 'final' within the meaning of 28 U.S.C. § 1291." 424 U.S. at 744, 96 S.Ct. at 1206 (citing *Borges v. Art Steel Co.*, 243 F.2d 350 (2d Cir.1957) (per curiam); *Leonidakis v. International Telecoin Corp.*, 208 F.2d 934 (2d Cir.1953) (per curiam); *Tye v. Hertz Driver Self Stations*, 173 F.2d 317 (3d Cir.1949); *Russell v. Barnes Foundation*, 136 F.2d 654 (3d Cir.1943) (per curiam)).

Notwithstanding the language employed in the Opinion, the court has been asked to consider whether, under RUSCC 54(b), a distinctly separate claim was presented in order to permit a final judgment to be entered on that distinctly separate claim. RUSCC 54(b) states:

> (b) Judgment upon Multiple Claims or Involving Multiple Parties. When more than one claim for relief is presented in an action, whether as a claim, counterclaim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all parties.

This rule was made effective in the Claims Court on October 1, 1982, pursuant to § 139(b)(1) of the Federal Courts Improvement Act of 1982, which amended 28 U.S.C. § 2503, which authorized the United States Claims Court to prescribe rules of practice and procedure for its proceedings (other than the Rules of Evidence), and is identical to Rule 54(b) of the Federal Rules of Civil Procedure.

Although determining whether or not an action presents more than one claim can be a difficult question at times, such is not the primary issue in the instant situation. The court is authorized by Rule 54(b) to direct the final judgment on "one or more but fewer than all of the claims...." Rule 54(b) does not authorize the court to enter a final judgment on anything less than at least one independent claim for relief. 6 J. Moore, W. Taggart, J. Wicker, Moore's Federal Practice, para. 54.34 (2d ed. 1988). A decision which disposes of less than all of a claim is interlocutory and the rule provides the court with no authority to enter it as a judgment. *See Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 437, 76 S.Ct. 895, 900, 100 L.Ed. 1297 (1956).

In the case at bar, the claim at issue for each taxpayer appears to be whether or not a given plaintiff is entitled to a tax refund. Resolution of the income allocation issue is only one of the legal considerations which are necessary to decide if any of the plaintiffs are entitled to a money judgment in the form of a tax refund. Therefore, review of the income allocation issue by an appellate reviewing authority can only resolve a portion of the refund claim and cannot qualify for finality under Rule 54(b).

Even assuming, arguendo, that the income allocation issue presented by plaintiff is a separate claim for the purposes of Rule 54(b), plaintiffs still fail to show why Rule 54(b) makes an immediate appeal appropriate in this case. Plaintiffs can point to no injustice which would result if an appeal on the issue presented for partial summary judgment is held off until after a trial on the remainder of the case. Certainly, plaintiff has not shown that "there is no just reason for delay" or other urgency which should compel this court to enter a final judgment on the income allocation issue, on the grounds that an immediate appeal thereof could expedite or further litigation. As a matter of fact, the court is hardpressed to find any urgent issue,

presented in this case, which cannot wait for appeal until after trial, in light of the fact that this case already has been around for more than a decade, and has been continuously delayed by acts of the plaintiffs and their counsel. Moreover, plaintiffs have already adjudicated the very same issues previously in the Tax Court, *Stemkowski v. Commissioner*, 76 T.C. at 252, and *Hanna v. Commissioner*, 76 T.C. at 252, as well as in the Second Circuit, *Stemkowski v. Commissioner*, 690 F.2d at 40, and the Fourth Circuit, *Hanna v. Commissioner*, 763 F.2d at 171.

It is a well settled principle that under Section 54(b) of the Rules of the United States Claims Court that the "determination" of whether a matter should be subject of an immediate appeal, is left to the sound discretion of the trial court, as is the determination to decide the appropriate time when each final decision in a multiple claims action is ready for appeal. *See Brown v. United States*, 3 Cl.Ct. 409, 413 (1983). This discretion is to be exercised in the interest of sound judicial administration, with a purpose of preserving the historic, judicial policy against piecemeal appeals. *Catlin v. United States*, 324 U.S. at 233–34, 65 S.Ct. at 633–34.[11]

28 U.S.C. § 1292(d)(2)

The statutory requirements for certification under Section 1292(d)(2) of Title 28 of the United States (1988) are as follows:

> When any judge of the United States Claims Court, in issuing an interlocutory order, includes in the order a statement that a controlling question of law is involved with respect to which there is substantial ground for difference of opinion and that an immediate appeal from that order may materially advance the ultimate termination of the litigation, the United States Court of Appeals for the Federal Circuit may, in its discretion, permit an appeal to be taken from said order, if application is made to that court

within ten days after the entry of such order.

This statute came with the creation of the United States Claims Court in the Federal Courts Improvement Act of 1982, 96 Stat. 36–37, and particularly § 125(b) of that Act, as an adjunct to this court's assumption of final jurisdiction over cases. The operative language applicable to the United States Claims Court, included in 28 U.S.C. § 1292(d)(2), is identical to the statutory standard of certification utilized by the United States District Courts in 28 U.S.C. § 1292(b).[12]

Section 1292(b), applicable to the District Courts, was enacted in 1958, following a study and proposal by the Judicial Conference of the United States. The discussion at the conference emphasized the need for a narrow standard governing interlocutory appeals and the need for a procedural mechanism which would avoid opening the door to frivolous, dilatory, or harassing interlocutory appeals. Note, *Interlocutory Appeals in the Federal Courts Under 28 U.S.C. § 1292(b)*, 88 Harv.L.Rev. 607, 610 (1975) (citing Hearing on the H.R. 6238 and H.R. 27260 before Subcomm. No. 3 of the House Comm. on the Judiciary 85th Cong., 2d Sess., ser II at 14 (1958)).

The purpose of that legislation was explained to the Senate Judiciary Committee by the drafting committee of the Judicial Conference in the following manner:

> [W]e have reached the conclusion that provision should be made for allowance of appeals from the interlocutory orders in those exceptional cases where it is desirable that this be done to avoid unnecessary delay and expense and that the danger of opening the door to groundless appeal and piecemeal litigation can be avoided by proper limitations to be included in the amendatory statute.
>
> \*     \*     \*     \*     \*     \*
>
> Your Committee is of the view that the appeal from interlocutory orders thus provided should and will be used only in

---

11. See footnote 9, page 139.

12. Because §§ 1292(b) and 1292(d)(2) have the same operative language and functions, the legislative history of § 1292(b) is "persuasive" regarding § 1292(d)(2). *United States v. Connolly*, 716 F.2d 882, 885 (Fed.Cir.1983), *cert. den.*, 465 U.S. 1065, 104 S.Ct. 1414, 79 L.Ed.2d 740 (1984).

exceptional cases where a decision of the appeal may avoid protracted and expensive litigation, as in antitrust and similar protracted cases, where a question which would be dispositive of the litigation is raised and there is serious doubt as to how it should be decided.... It is not thought that district judges would grant the certificate in ordinary litigation which could otherwise be promptly disposed of or that mere question as to the correctness of the ruling would prompt the granting of the certificate.

Report of the Committee on Appeals from Interlocutory orders of the District Courts, September 23, 1953, reprinted in 1958 U.S. Code Cong. & Admin.News, 85th Cong., 2d Sess., at 5260–61.

■ The legislative history of the statute, as well as the historic, and often repeated, policy against interlocutory appeals, suggests that great restraint should be used in permitting interlocutory appeals. The House Report No. 1667, 85 Cong.2d Sess., pp. 1–2, U.S.Code Cong. & Admin. News 1958, p. 5255, in fact, pointed out that "the indiscriminate use of such authority may result in delay rather than expedition of cases in the district court."

Accepting the premise that an interlocutory appeal is appropriate only in a few cases, the federal courts have limited the usage of interlocutory appeals under § 1292(b) to "exceptional cases," with the key consideration being whether or not the order in question "truly implicates the policies favoring interlocutory appeal[:] [t]he avoidance of harm to a party *pendente lite* from a possibly erroneous interlocutory order and the avoidance of possibly wasted trial time and litigation expense." *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 756 (3d Cir.) (en banc), *cert. denied*, 419 U.S. 885, 95 S.Ct. 152, 42 L.Ed.2d 125 (1974); *see also Cardwell v. Chesapeake & O.R. Co.*, 504 F.2d 444, 446 (6th Cir.1974); C. Wright, Law of Federal Courts § 102, at 518.

In addition to reaching a determination that an interlocutory appeal is appropriate only in "exceptional cases," 28 U.S.C. § 1292(d)(2) sets out three criteria, all of which must be met, before a trial judge should certify an interlocutory order for appeal. The trial judge, due to his/her familiarity with the pleadings and the Order or Opinion, as issued, is in the best position to decide if certification would promote efficient justice and to help avoid frivolous appeals. To qualify as appropriate for certification, the order must involve:

(1) a controlling question of law; as to which there is

(2) substantial ground for difference of opinion; and that

(3) possible material advancement of the ultimate termination of the litigation will occur if the certification order is issued.

Various forums have articulated different understandings of what constitutes a "controlling question of law." While Congress did not specifically define what it meant by "controlling," the legislative history of 1292(b), as stated previously, indicates that this section was to be used only in the exceptional situation in which allowing an interlocutory appeal would avoid protracted and expensive litigation. *United States Rubber Co. v. Wright*, 359 F.2d 784, 785 (9th Cir.1966) (per curiam). Although, in the past, the narrow approach to interlocutory appeals has been criticized, *see e.g., Hadjipateras v. Pacifica, S.A.*, 290 F.2d 697, 702–03 (5th Cir.1961), more recently the Supreme Court in *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978), has indicated its approval of utilizing a narrow "exceptional circumstances" standard under section 1292(b). The Court stated:

Finally, even if the district judge certifies the Order under § 1292(b), the appellant still has the burden of persuading the court of appeals that exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of final judgment.

*Coopers & Lybrand*, 437 U.S. at 475, 98 S.Ct. at 2461 (quoting *Fisons, Ltd. v. United States*, 458 F.2d 1241, 1248 (7th Cir.), *cert. denied*, 405 U.S. 1041, 92 S.Ct. 1312, 31 L.Ed.2d 581 (1972)).

With this "exceptional circumstances" standard as a foundation, a trial judge must still decide what Congress meant when it employed the expression "controlling question of law." The expression "controlling question of law" is not prone to either a definite or concise definition. One court has stated that, in order to meet the goal of avoiding a wasted trial, at the very least, a "controlling question of law" must encompass "every order which, if erroneous, would be reversible error on final appeal." *Katz v. Carte Blanche Corp.*, 496 F.2d at 755. With the aforementioned standard, it must be kept in mind that the ultimate purpose of the statute is to avoid unnecessary proceedings at the trial level, and therefore, the criterion that an order raise a "controlling question of law" would, at a minimum, seem to require that reversal result in an immediate effect on the course of litigation and in some savings of resources either to the court system or the litigants. Other courts, while refusing to interpret the phrase so narrowly as to require that reversal of the trial court's order terminate the litigation, have offered several useful and restrictive examples that amount to a controlling question of law, such as: who are necessary and proper parties; whether or not a court to which a case has been transferred has jurisdiction; or whether state or federal law should apply. *See United States v. Woodbury*, 263 F.2d 784, 787 (9th Cir.1959). Moreover, the Claims Court has held that, "questions of law have only been deemed 'controlling' under this statute [28 U.S.C. § 1292(b) (1982)] if they materially affect issues remaining to be decided in the trial court." *Brown v. United States*, 3 Cl.Ct. 409, 411 (1983) (citing *In re Cement Antitrust Litigation*, 673 F.2d 1020, 1027 (9th Cir.1981), *aff'd* 459 U.S. 1190, 103 S.Ct. 1173, 75 L.Ed.2d 425 (1983)); *E.F. Hutton & Co. v. Brown*, 305 F.Supp. 371, 402–03 (S.D.Tex. 1969).

█ Plaintiff, in his motion, fails to present any controlling question of law. Moreover, all four federal courts which have already ruled on the issue presented are in agreement as to the correct position. The question which the plaintiffs seek to have certified does not materially affect the other issues which remain to be tried and there is no reason to believe that plaintiffs and their counsel would resolve the case in this court following an appeal of the relevant issues any more than they have done so in the past after previous appeals in two other circuits on virtually the same issue. Thus, certification of the issue at hand will in no way have an immediate impact on the course of the proceedings, nor will certification save the resources of either the court or the litigants. Quite to the contrary, certification most likely would increase the costs to both the litigants, as well as to this court and to the United States Court of Appeals for the Federal Circuit.

The second element of Section 1292(d)(2) of Title 28 of the United States Code is the requirement that there be a substantial ground for a difference of opinion about the challenged Order before it can be properly certified. The substantial ground for difference of opinion requirement has only infrequently been discussed by the courts. Note, *Interlocutory Appeals in the Federal Courts Under 28 U.S.C. § 1292(b)*, 88 Harv.L.Rev. at 624. Degrees of legal doubt escape precise quantification. Any judge, when issuing an Opinion or Order, has already weighed the applicable precedent and facts of the particular case before issuing an Opinion or Order. Nonetheless, there are certainly times when a judge must choose between several close options and issue a decision. For example, in cases in which the Federal Circuit has not ruled but there is a decision/split in the Circuits on the issue at bar, or when the facts in a given case present a close judgment call for the trial court, as they are applied to the relevant precedent. Examples of this latter dilemma would be evaluations of the credibility of witnesses or documents offered in support of a parties' position. Issues of contract interpretation can sometimes be close and trial judges might find it difficult to decide between two credible options, one presented by the plaintiff and one by the defendant. In the instant case, however, this court firmly believes that

when it issued its decision on April 26, 1990, on the income allocation question, and joined the Second and Fourth Circuit Courts of Appeals and the Tax Court in finding against the plaintiffs, it did not take a controversial position. Nonetheless, the court issued a detailed Opinion, and tried to lay out the grounds for its holding carefully.

Although the possibility exists, this judge perceives no substantial likelihood in this case that the Opinion issued on April 26, 1989 on the "income allocation question" will be reversed. The plaintiffs, in the case at bar, have had several opportunities to argue the income allocation issue, which was also the subject of the court's April 26, 1989 Opinion. The plaintiffs raised the identical income allocation issue twice in the United States Tax Court and lost on both occasions. *Stemkowski v. Commissioner*, 76 T.C. at 252; *Hanna v. Commissioner*, 76 T.C. at 252. As if this were not enough, these cases were appealed to two different federal circuits, the United States Court of Appeals for the Second Circuit and the United States Court of Appeals for the Fourth Circuit, both of which affirmed both tax court cases on the income allocation issue. *Stemkowski v. Commissioner*, 76 T.C. 252 (1981), *aff'd in part, rev'd in part,* and *remanded,* 690 F.2d 40 (2d Cir.1982); *Hanna v. Commissioner*, 76 T.C. 252 (1981), *aff'd in part, rev'd in part,* and *remanded,* 763 F.2d 171 (4th Cir.1985).

The plaintiffs, therefore, have had an opportunity to litigate the exact income allocation issue in two trial level courts, the United States Tax Court, and the United States Claims Court, as well as before two independent panels of federal circuit judges in two different federal circuits, the United States Court of Appeals for the Second Circuit and the United States Court of Appeals for the Fourth Circuit. To date, plaintiffs have not yet been able to convince either a judge or a panel of judges that their theory concerning the "income allocation question" is correct. Therefore, this court finds that there is no substantial ground for a difference of opinion with regard to the income allocation question.

Assuming, arguendo, that plaintiffs could satisfy the first two criteria of Section 1292(d)(2), which, in fact, they have failed to do, plaintiffs also fail to persuade this court that they can meet the third requirement of Section 1292(d)(2), that an immediate appeal from the April 26, 1989 Opinion "may materially advance the ultimate termination of [this] litigation." At issue here are cases, all with the common "income allocation question," which date as far back as fourteen years since the first Complaint was filed. This court is forced to agree with the defendant that at this point there is nothing to be gained by further delaying trials on these matters. Moreover, it appears abundantly obvious to this court that the remaining dispositive issues in the subject litigation are primarily questions of fact incapable of resolution, in whole or in part, by another appeal of questions which have already been decided. The specific deduction at issue in each of the individual cases turns entirely upon separate questions of law and fact. Thus, even in the unlikely event that the plaintiffs could prevail in an interlocutory appeal, resolution of the interlocutory appeal would not eliminate the need to try these cases, but would only cause additional proceedings, in a situation in which, after trial, each of the 230 individual plaintiffs, together with their spouses in some cases, might still file separate additional appeals.

Granting of plaintiffs' motion to certify this court's Opinion of April 26, 1989, pursuant to 28 U.S.C. § 1292(d)(2), would not comport with the fundamental policies underlying the interlocutory appeal statute, in that it would: (a) violate the "exceptional case" standard; (b) permit a groundless appeal; (c) promote piecemeal litigation; and (d) not dispose of the main issues surrounding the ultimate, individual tax liability questions. The plaintiffs have not presented any credible evidence to the contrary, nor have they shown that an interlocutory appeal at this time would: (a) avoid additional trial time and expense and for that matter how additional trial time and expense is not inevitable if certification were granted; (b) materially advance the

ultimate termination of this litigation; or (c) cause any harm to him.

As indicated above, this case has been marked by considerable confusion, exacerbated significantly by the continued, partial and late filings submitted by plaintiffs' counsel, and by his failure to respond at all to numerous other due dates, in accordance with the Rules of the court or those set by the court in Orders signed by this judge, and the judge previously assigned to the cases. Moreover, although plaintiffs' counsel appears to have agreed on several occasions that if the decision on the "exclusion" or "income allocation" issue was negative to the position taken by him on behalf of his clients, that he contemplated wholesale settlement of the cases. Like so many other filings and statements in these cases, representations by Mr. Abrahams have not always been repeated in the same form at subsequent appearances. Government counsel, Mr. Gilbert Rubloff, who originally represented the United States in these cases, prior to those who are presently counsel for the government, seemed to believe and so represented to the court that settlement, rather than trial was the contemplated solution, after resolution of the Summary Judgment Motion by this court.

The court recognizes that at the most recent status conference, at which all the parties were represented, it gave plaintiffs' counsel reason to hope that it might approve the Motion to Certify. However, after the court so indicated, towards the end of that same status conference, plaintiffs' counsel, Mr. Abrahams, finally, candidly admitted that, regardless of how the United States Court of Appeals for the Federal Circuit were to decide the issue if it were to be certified, he would still take the position that there would have to be trials in each of the cases.

Therefore, upon serious reflection, and after another review of the record in these cases, the court feels that it would be inappropriate to endorse plaintiffs' motion to certify portions of the cases for appeal when trials are likely or even inevitable in each of the 230 cases, according to plaintiffs' counsel. To be sure, certification is appropriate in certain cases as a way to streamline litigation. These cases, however, do not present the restricted situation when it is in the best interests of case management and fairness to certify all or some of the issues in the cases.

In good conscience, this court is hard-pressed to allow plaintiffs and their counsel yet another opportunity to appeal the "income allocation" question to a third Circuit Court of Appeals when the United States Courts of Appeals for the Second and Fourth Circuits, the United States Tax Court, and the United States Claims Court have all ruled, with consistency, that the government should prevail on the issue. Even Mr. Abrahams, counsel for the plaintiffs, at a status conference held on July 2, 1990, stated that there were not any differences between the various cases in each of the separate courts, except that he had produced more facts and affidavits for the Claims Court to review. Moreover, despite the submission of what Mr. Abrahams has termed additional information, this court, in its Opinion on the Motion for Partial Summary Judgment, still has found against plaintiffs and is in agreement with all the other federal courts which have previously reviewed this issue. *Favell*, 16 Cl.Ct. at 700. The court fails to see the request for certification as anything other than just another, dilatory tactic on the part of plaintiffs' counsel and another way to keep this matter unresolved, despite plaintiffs' counsel's verbal and written protestations to the contrary. In the interests of judicial efficiency, this court takes the position that if issues remain after the trials of all these cases, which plaintiffs' counsel has indicated he intends to pursue, the United States Court of Appeals for the Federal Circuit can address all the issues at one time, including the "exclusion" or "income allocation" issue.

## CONCLUSION

For the foregoing reasons, plaintiffs' "Motion for Certification to Appeal the Decision Regarding the Parties' Motion for

Partial Summary Judgment" is, hereby, DENIED.

IT IS SO ORDERED.