AMERICAN MANAGEMENT SYSTEMS, INC., Plaintiff,

v.

The UNITED STATES, Defendant.

No. 01–586C.

United States Court of Federal Claims.

Jan. 9, 2003.

F. Whitten Peters, with whom were Brendan V. Sullivan, Jr., John G. Kester, Judith A. Miller, and Janet C. Fisher, Williams & Connolly LLP, and C. Stanley Dees, McKenna Long & Aldridge LLP, Washington, D.C., for plaintiff.

Assistant Director Brian M. Simkin, with whom were Assistant Attorney General Robert D. McCallum, Jr. and Director David M. Cohen, Department of Justice, Civil Division, Commercial Litigation Branch, Washington, D.C., for defendant. Elizabeth S. Woodruff, General Counsel, Federal Retirement Thrift Investment Board, of counsel.

## ORDER

### GRANTING MOTION TO AMEND OPINION TO CERTIFY FOR INTERLOCUTORY APPEAL

WIESE, Judge.

### I.

On August 30, 2002, this court issued a decision denying defendant's motion to dismiss for lack of jurisdiction. The court based its decision on a determination that the Federal Retirement Thrift Board (the Thrift Board) was a governmental agency whose administrative expenses are payable out of public funds made available through a congressional appropriation; hence, the court concluded that disputes arising under contracts with the Thrift Board are assertable in this court.

In its opinion, the court held that the language of 5 U.S.C. § 8437(c) (2000), stating that "[t]he sums in the Thrift Savings Fund are appropriated ... to pay the administrative expenses of the [Thrift Board]," is sufficient to establish the Thrift Board as an appropriated fund instrumentality. Defendant urges a different reading of the statute. In defendant's view, section 8437(d), the subsection immediately following section 8437(c), renders the Thrift Board's access to appropriated funds for payment of administrative expenses both conditional and limited. That is the case, defendant argues, because section 8437(d) directs that the Thrift Board's administrative expenses "shall be paid first out of any sums in the Thrift Savings Fund forfeited under section 8432(g) of this title [(i.e., agency contributions to a federal employee's Thrift Savings Fund account subsequently forfeited because of the employee's failure to satisfy the minimum employment

term)] and then out of net earnings in such Fund."

Access is conditional, defendant concludes, because appropriated funds may be used for the payment of the Thrift Board's expenses only where such funds become available through a "rerouting" of forfeited government contributions. Similarly, if forfeited contributions prove insufficient or unavailable to pay administrative expenses, then administrative expenses are paid from net earnings, *i.e.*, from non-appropriated funds. *See* 5 U.S.C. § 8437(g) (stating that net earnings attributable to sums contributed to a federal employee's Thrift Savings Fund are "held ... in trust for such employee"). Defendant maintains that the structure of the statutory scheme clearly signals Congress' intention to place the burden of the Thrift Board's administrative expenses on the federal employees participating in the Thrift Savings Fund rather than on the public fisc. Under this view of the statute, then, the non-appropriated funds doctrine would bar this court from exercising Tucker Act jurisdiction over plaintiff's claim. *See L'Enfant Plaza Props., Inc. v. United States*, 229 Ct.Cl. 278, 668 F.2d 1211 (1982); *Furash & Co. v. United States*, 252 F.3d 1336 (Fed.Cir.2001).

On November 5, 2002, defendant moved the court to certify its opinion for interlocutory appeal pursuant to 28 U.S.C. § 1292(d)(2) (2000). That statute facilitates immediate review in the Federal Circuit of a judicial opinion or order involving "a controlling question of law ... with respect to which there is a substantial ground for difference of opinion and ... an immediate appeal from that order may materially advance the ultimate termination of the litigation." *Id.* Defendant seeks certification to address the following question: "Where Congress directs that an agency's access to appropriated funds for payment of administrative expenses shall be both conditional and limited, may the agency nevertheless be regarded as an appropriated fund instrumentality for purposes of this court's Tucker Act jurisdiction?"

For the reasons set forth below, defendant's motion for certification is granted.

## II.

The three-prong test set forth in 28 U.S.C. § 1292(d)(2), enacted as part of the Federal Courts Improvement Act of 1982, Pub.L. No. 97–164, 96 Stat. 25, 36–37, is "virtually identical" to the statutory standard of certification utilized by the United States district courts, 28 U.S.C. § 1292(b) (2000). *United States v. Connolly*, 716 F.2d 882, 883 n. 1 (Fed.Cir. 1983), *cert. denied*, 465 U.S. 1065, 104 S.Ct. 1414, 79 L.Ed.2d 740 (1984). Consequently, this court has found the legislative history of section 1292(b) "persuasive" when interpreting section 1292(d)(2). *Id.* at 885; *Favell v. United States*, 22 Cl.Ct. 132, 142 n. 12 (1990); *see also Brown v. United States*, 3 Cl.Ct. 409, 411 (1983) (finding that "interpretations of § 1292(b) by Congress and the courts are equally pertinent to § 1292(d)(2)").

As the Supreme Court has observed, the congressional design underlying section 1292(b) was "to reserve interlocutory review for 'exceptional' cases while generally retaining for the federal courts a firm final judgment rule." *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 74, 117 S.Ct. 467, 136 L.Ed.2d 437 (1996) (quoting *Fisons, Ltd. v. United States*, 458 F.2d 1241, 1248 (7th Cir.), *cert. denied*, 405 U.S. 1041, 92 S.Ct. 1312, 31 L.Ed.2d 581 (1972)); *see also Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978). Accordingly, this court has applied an "exceptional case" standard to motions seeking certification for interlocutory appeal under section 1292(d)(2). Although meeting that standard occasionally has been described as a prerequisite to the application of the statutory criteria of section 1292(d)(2), *see Brown*, 3 Cl.Ct. at 412, more usually the "exceptional case" principle serves as a source of guidance in construing and applying those criteria. *See Coast Fed. Bank, FSB v. United States*, 49 Fed.Cl. 11, 13 (2001); *Northrop Corp. v. United States*, 27 Fed.Cl. 795, 798–99 (1993); *Favell*, 22 Cl.Ct. at 144.

With these considerations in mind, we conclude that the jurisdictional issue raised by 5 U.S.C. § 8437 constitutes an appropriate question for certification. First, the jurisdictional issue presents a controlling question of law. Questions of law are "controlling" when

they "materially affect issues remaining to be decided in the trial court." *Pikes Peak Family Housing, LLC v. United States,* 40 Fed. Cl. 673, 686 (1998) (quoting *Brown,* 3 Cl.Ct. at 411). This definition excludes questions involving narrow, nondispositive legal issues. *Pikes Peak,* 40 Fed.Cl. at 686; *Stephenson v. United States,* 33 Fed.Cl. 63, 80 (1994). In *Vereda, Ltda. v. United States,* 46 Fed.Cl. 569 (2000), this court concluded that the issue of law presented therein was controlling based on the following reasoning:

> If the Federal Circuit finds that this Court does not have jurisdiction to hear [this issue], the entire lawsuit will be dismissed. On the other hand, were this case to go to trial, this Court may still have to suspend or terminate proceedings if the Federal Circuit were to hand down potentially adverse rulings in other cases.

*Id.* at 570. Similarly, in the instant case, if the Federal Circuit determines that the administrative expenses of the Thrift Board are not paid from appropriated funds, plaintiff's suit will be dismissed for lack of subject matter jurisdiction.

Second, the jurisdictional issue permits "substantial ground for difference of opinion." 28 U.S.C. § 1292(d)(2). The issue is one of first impression; no body of guiding precedent exists. Of course, interlocutory review is not appropriate for every question of first impression; section 1292(d)(2) was "not intended merely to provide review of difficult rulings in hard cases." *United States Rubber Co. v. Wright,* 359 F.2d 784, 785 (9th Cir.1966) (per curiam). By the same token, however, there is no evidence that Congress intended that section 1292(d)(2) be unavailable to address questions of first impression, and this court and the Federal Circuit have in fact found such questions suitable for certification. *See, e.g., Weeks Dredging & Contracting, Inc. v. United States,* 11 Cl.Ct. 37 (1986); *Taylor v. PPG Indus., Inc.,* 256 F.3d 1315 (Fed.Cir.2001). Moreover, a closely analogous body of case law does not exist from which this court may draw guidance. *Compare White v. Nix,* 43 F.3d 374, 378 (8th Cir.1994). Although this court and the Federal Circuit have had frequent occasion to consider the non-appropri-ated funds doctrine, *see, e.g., MDB Communications, Inc. v. United States,* 53 Fed.Cl. 245 (2002); *Slattery v. United States,* 53 Fed.Cl. 258 (2002); *Taylor v. United States,* 303 F.3d 1357 (Fed.Cir.2002), the issue presented in this case is distinct.

As noted above, the Thrift Board's enabling legislation mandates that its administrative expenses be paid from specific fund assets—forfeited agency contributions and net earnings. Although the sums contributed to the Thrift Fund by employers originate as appropriated funds, 5 U.S.C. § 8437(c), the net earnings these sums generate do not, *see* 5 U.S.C. § 8437(g) (stating that "all net earnings in [the Thrift Savings] Fund attributable to investment of such sums are held in such Fund in trust" for employees/members). The conclusion one may legitimately draw from this statutory scheme is that while Congress did not intend to cut off all access to appropriated funds in the payment of the Thrift Board's expenses, it clearly intended that all necessary supplementation of initial appropriations be drawn from non-appropriated sources. Unlike the existing line of non-appropriated fund cases, this matter therefore does not pose a question as to whether the relevant statutory scheme "indicates that Congress intended the activity in question to operate without the benefit of appropriated funds." *Furash & Co. v. United States,* 46 Fed.Cl. 518, 521 (2000), *aff'd,* 252 F.3d 1336 (Fed.Cir.2001). Rather, the question is whether the distinct limits that Congress has placed on the use of appropriated funds is incompatible with the court's exercise of jurisdiction in this case in that any judgment rendered in plaintiff's favor would necessarily require payment from appropriated funds.

Third and finally, certification of the question "may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(d)(2). As noted above, reversal of this court's order will terminate plaintiff's suit; affirmance "will permit all those involved to proceed to trial undeterred by this uncertainty." *Vereda,* 46 Fed.Cl. at 571.

### III.

In engaging in this analysis, the court remains cognizant of the key consideration:

"[W]hether the order in question 'truly implicates the policies favoring interlocutory appeal.'" *Brown,* 3 Cl.Ct. at 411 (quoting *Katz v. Carte Blanche Corp.,* 496 F.2d 747, 756 (3d Cir.) (en banc), *cert. denied,* 419 U.S. 885, 95 S.Ct. 152, 42 L.Ed.2d 125 (1974)). We also take note of the fact that, pursuant to regulation, the Solicitor General has determined that interlocutory appeal in this case is appropriate. *See* 28 C.F.R., pt. 0, subpt. Y, App. (2002) (requiring authorization by the Office of the Solicitor General to pursue appeal from an adverse decision against the United States). Given the often difficult issues of proof that can be encountered in the trial of contract claims arising out of a contract default termination (especially, as here, a default termination of a design and development contract), "a decision of the appeal may avoid protracted and expensive litigation." *Favell,* 22 Cl.Ct. at 143.

## CONCLUSION

For the foregoing reasons, defendant's motion to amend this court's August 30, 2002, opinion to certify for interlocutory appeal is granted. Further proceedings in this action are suspended pending conclusion of the appeal.