**OAKLAND TRUCK SALES, Inc.,**
v.
**The UNITED STATES.**
**No. 417-56.**

United States Court of Claims.
April 3, 1957.

Ralph D. Pittman, Washington, D. C., and William R. Glendon, Washington, D. C., Dwight, Royall, Harris, Koegel & Caskey, New York City, on the briefs, for plaintiff.

Kendall M. Barnes, Washington, D. C., with whom was George Cochran Doub, Asst. Atty. Gen., for the defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

MADDEN, Judge.

The plaintiff in January 1950 purchased from a German corporation, herein called STEG, a quantity of American Army surplus property which had been turned over by our Government to the German Government. STEG was a corporation formed by the German Government for the purpose, apparently, of reselling such property for the account of the German Government. After title to the property had passed to the plaintiff, but while it still was located in one or more American Army camps in Germany, the American Army, about October 1, 1950, took possession of the property and refused to allow the plaintiff to remove it. Our Army also instructed STEG not to make delivery of the property to the plaintiff. The plaintiff demanded compensation from the Army finance authorities, and was paid a sum considerably less than it claimed, but did not release the Government from further liability.

The Government, in its answer, says that on or about November 11, 1954, the plaintiff instituted an action in the courts of the Federal Republic of Germany against TREUAG, the legal suc-

cessor to STEG, for failure to deliver the property sold to the plaintiff. In that action the plaintiff alleged that STEG voluntarily delivered to the American Army the property which it had sold to the plaintiff. The Government says that by the terms of certain agreements[1] between the United States and the Federal Republic of Germany, and relating to the settlement of the obligation of the Federal Republic with respect to surplus property, the United States is obligated to reimburse the Federal Republic for any judgment which the plaintiff may recover in its German suit. The Government then says that, under the provisions of 28 United States Code, § 1500, this court does not have jurisdiction of the plaintiff's suit.

In its answer the Government states a second defense, which is not relevant at this stage of the case, and two counterclaims. The plaintiff has replied to the defendant's counterclaims, denying their validity.

The Government has now filed a motion for judgment on the pleadings, asserting that 28 United States Code, § 1500 deprives this court of jurisdiction of this claim, because of the pendency of the plaintiff's suit in the German court.

Section 1500 says—

"The Court of Claims shall not have jurisdiction of any claim for or in respect to which the plaintiff or his assignee has pending in any other court any suit or process against the United States or any person who, at the time when the cause of action alleged in such suit or process arose, was, in respect thereto, acting or professing to act, directly or indirectly under the authority of the United States."

The basis of the Government's contention is that the German public corporation, TREUAG, the defendant in the plaintiff's German suit is, in the circumstances, a person acting under the authority of the United States. The Government points to the agreements cited supra which said that the United States would credit the Federal Republic with the costs and judgments paid by the Federal Republic as a result of suits against it or its agencies relating to the disposition of surplus property, provided that the United States was given notice of such suits and an opportunity to participate in their defense.

We think section 1500 is not applicable. The plaintiff sues in this court because, it says, the Government took its property and is therefore obliged to pay it just compensation. It sues in the German court because, it says, the German corporation sold the property to it, and then voluntarily turned over the possession of it to another person, the United States. The German corporation was an agency of the German Government and, no doubt, did whatever it was instructed by its government to do. But neither the corporation nor its government was an agency of the United States. It is likely that in October 1950 when the property was taken by the United States, the German Government was given some assurance, later embodied in the formal agreements cited above, that if it complied with the wishes of the United States it would be held harmless. But such a collateral assurance did not make it an agency of the United States, within the meaning of section 1500, unless the word "indirectly" is to be given an almost unlimited meaning.

The plaintiff has been put in a position where it is necessary for it to bring its suit in this court in order to protect its interests. To its suit in the German court, the German equivalent of a demurrer was filed, apparently based on the assertion that the pertinent documents showed that the defendant TREUAG was compelled by *force majeure*, i. e. the American occupation authorities, to deliver the property to the United States, and therefore its delivery to the plaintiff was impossible, and was excused.

---

1. Agreement of February 27, 1953, Treaties and Other International Acts Series, No. 2797; Agreement of April 14, 1955, id. No. 3245.

The German court of first instance, the Landgericht, overruled the demurrer. The case has been appealed to the Oberlandesgericht, which, apparently of its own motion, has directed the plaintiff to procure and produce a certificate of the Ambassador of the United States about the question whether STEG, when it, in 1950, delivered the property to the United States, was, under the then Occupation Statute and a certain section of a law of the Allied High Command, performing an act as to which the German courts then and now had no jurisdiction without special authorization of the Allied High Command.

If the German courts should decide that they had no jurisdiction, or if TREUAG's demurrer should be sustained on appeal, on the ground of *force majeure*, the plaintiff would have no remedy in Germany. The United States would have taken the plaintiff's property, the Statute of Limitations would have run against a suit in this court, and the plaintiff would have no remedy anywhere. We are not disposed to stretch the meaning of section 1500 to produce this result.

If the plaintiff recovers in the German courts, the United States, because it is bound by its agreement with Germany to, in effect, pay the judgment, would have discharged its liability. Because the litigation in the German courts has already progressed to the appellate court, and gives promise of being concluded with reasonable promptness, we shall not proceed with the case in this court until some further reason appears for our doing so.

The defendant's motion for judgment on the pleadings is denied.

It is so ordered.

JONES, Chief Judge, and LARAMORE, WHITAKER and LITTLETON, Judges, concur.