**CANTIERI ROVINA**

v.

**UNITED STATES.**

No. 362–85C.

United States Claims Court.

Sept. 3, 1986.

Alan M. Lestz, Bronxville, N.Y., attorney of record for plaintiff.

David Epstein, Washington, D.C., with whom was Asst. Atty. Gen. Richard K. Willard, for defendant.

## OPINION

YOCK, Judge.

In this action before the Court on cross-motions for summary judgment, plaintiff seeks review, pursuant to the Wunderlich Act, 41 U.S.C. §§ 321, 322 (1982), of two decisions by the Armed Services Board of Contract Appeals (Board or ASBCA). The Board, in essence, affirmed two refusals by the contracting officer to render a final decision on plaintiff's equitable adjustment contract claim. Plaintiff requests that the Board decisions be found erroneous as a matter of law or are otherwise not based on substantial evidence. Defendant requests that this action be dismissed for lack of jurisdiction or, in the alternative, on the merits.

For the reasons discussed herein, the plaintiff's claim is dismissed without prejudice.

### Facts

On February 21, 1979, plaintiff was awarded contract No. 50–9051–001 (the contract) by defendant for the disposal and demilitarization of six different types of military ammunitions (shells) located in Italy. Plaintiff paid defendant some $407,-795 for the privilege of demilitarizing the shells and in return received title to the residual products. The contract also provided that adjustments in price would be made in the event of misdescription of a line item or upon performance cost increases due to changes in demilitarization methods mandated by defendant's contracting officer.

At some point in the fall of 1979, plaintiff informed defendant of two line item misdescriptions. The contracting officer acknowledged the misdescriptions and the parties agreed upon a price adjustment in favor of plaintiff for one item, but disagreed upon the price adjustment of the other.

On October 13, 1979, explosions occurred at plaintiff's facility during the demilitarization process. The explosions, most unfortunately, resulted in the deaths of five

people, as well as in extensive damage to plaintiff's plant and equipment and to the property of third parties.

Following the explosion, Italian authorities arrested and criminally charged plaintiff's principals in connection with the incident. Subsequently, the U.S. Government contracting officer was criminally indicted as well.

Following this explosion, all work under the contract was suspended. At some point thereafter, plaintiff entered a liquidation proceeding, which is an Italian form of bankruptcy.[1] On April 22, 1981, the liquidator for the plaintiff instituted a civil action in Italy against the Governments of the United States and Italy. The action alleged that the defendant (and Italy) was responsible for the explosion and damages because it knowingly sold defective ammunition to the plaintiff. Relief requested included recovery for damages to plaintiff's property, lost profits on the contract, indemnification for liability to injured third parties, as well as restitution for amounts plaintiff overpaid for the shells. Pursuant to Italian law, the Italian civil proceeding was suspended pending disposition of the Italian criminal case.

During the summer of 1982, plaintiff was instructed by the U.S. Government to complete the demilitarization process using methods different from those specified in the contract. Thereafter, on August 6, 1982, the liquidator submitted a claim to the contracting officer for an equitable adjustment in regard to the following items:

(a) Additional costs of changed demilitarization methods and procedures in the performance of the contract;

(b) The additional costs of site preparations and cleanup;

(c) The costs incurred for the idle time of the plant resulting from the contracting officer directed suspension period; and

(d) The cost of special facilities and equipment which were required to complete performance.

The total amount requested was some $2,572,355. After initially acknowledging the plaintiff's claim by a letter dated September 1, 1982, the contracting officer noticed that the claim was not properly certified in accordance with the statutory mandate contained in section 813 of the Department of Defense Authorization Act of 1979, 10 U.S.C. § 2304 note (Supp. III 1979), nor had the plaintiff made an election pursuant to section 16 of the Contract Disputes Act of 1978, Pub.L. No. 95–563, 41 U.S.C. § 601 *et seq.* (1982) (CDA). Therefore, after consulting her own legal counsel, and coordinating her actions with the U.S. Department of Justice in light of the Italian litigation involving the United States and the contractor, the contracting officer again responded to the plaintiff by letter on October 18, 1982. This letter indicated that the plaintiff would have to elect whether to proceed under the CDA or under the Disputes clause of the contract, and in any event, a proper certification of the claim was essential before she could proceed to decide it.

Instead of responding to the contracting officer, the plaintiff, on November 1, 1982, filed an appeal with the Armed Services Board of Contract Appeals (Board or ASBCA). That appeal, ASBCA No. 27753 (the first appeal) alleged that the contracting officer's October 18, 1982 letter and the surrounding circumstances "convey[s] the intention to deny the claims on the merits, while delaying the process of claim review by a plethora of technical impediments." The plaintiff then requested that the Board forthwith decide the equitable adjustment claim or order the contracting officer to do so. Government counsel thereafter moved the Board to dismiss the appeal on the grounds that the claim had not been properly certified and thus the contracting officer was well within her rights not to issue a final decision until the appropriate certification had taken place.

On June 15, 1983, the ASBCA dismissed the plaintiff's first appeal without prejudice, holding that:

1. Plaintiff managed to recover and emerged    from liquidation sometime in January 1983.

In the absence of a proper certification the contracting officer was under no duty to render a decision on appellant's claim or request for equitable adjustment. The contracting officer tried several times to obtain a proper certification and never did so before appellant filed its "appeal" with the Board.

We conclude that the contracting officer was well within her rights in demanding a proper certification as a basis for deciding appellant's claim. The delay of which appellant complains was caused by appellant; not the contracting officer. There was not, therefore, any basis on which we could conclude that the contracting officer either refused to issue a final decision or unduly delayed the processing of the claim. Consequently, the exception to the requirement for a final decision is not for application.

It is clear that no final decision has been issued. Without one, this appeal is premature. It must be dismissed.

By letter dated July 20, 1983, the plaintiff resubmitted the same equitable adjustment claim to the contracting officer. This time, however, the plaintiff reduced the amount claimed from $2,572,355 to some $1,863,663, and properly certified the claim.

In reviewing the merits of the resubmitted claim, however, the contracting officer became concerned that the claim was inflated because the plaintiff was using "projected costs" as opposed to "actual costs" notwithstanding the fact that the actual work which formed the basis of the claim had begun in August of 1982 and had been completed by April of 1983, approximately three months before the claim was resubmitted. Consequently, she believed it necessary to complete an audit of the plaintiff's books and records to verify the claim. Before advising the plaintiff of her concerns, however, she again consulted Department of Defense (DOD) counsel to determine whether her audit would impact in any way on the ongoing criminal and civil actions proceeding in the Italian courts. DOD counsel, in turn, sought advice from the U.S. Department of Justice on the mat-ter. While the Justice Department was considering the matter, the plaintiff demanded by letter of December 6, 1983 to the contracting officer, that she was to "forthwith proceed with negotiation or issue your final findings and decision." By letter dated January 24, 1984, the contracting officer replied to the plaintiff, indicating that she was awaiting guidance from the U.S. Department of Justice. Four days prior, however, on January 20, 1984, the plaintiff filed its second appeal with the ASBCA (ASBCA No. 29227).

By letter dated March 14, 1984, the U.S. Department of Justice provided its guidance to the contracting officer. The letter in pertinent part reads:

In your letter of December 9, 1983 you raised the question of whether the Sales Contracting Officer could or should proceed to consider the claim filed by or on behalf of the contractor herein, Cantieri Rovina, under Contract No. 50–9051–001. You particularly inquired whether in view of the US Department of Justice and the attorneys it has retained in Italy in connection with the civil and criminal proceedings pending there, the efforts by or on behalf of the Sales Contracting Officer to gather the information necessary for the evaluation of the claim may be frustrated or blocked by the Italian criminal procedure.

It should be noted at the outset that the issue of liability, i.e. the question of who was at fault in the explosion which occurred at the Cantieri Rovina plant on October 12, 1979, is crucial. It will determine practically all decisions which will have to be made by the Contracting Officer and/or by the ASBCA herein. Any attempt to divorce this basic question of liability from other issues which the contractor ostensibly submits for decision is to draw a cloud or a bank of fog over the true issues. Any analysis of this dispute must necessarily lead to the conclusion that the contractor's claim stands and falls with the issue of the liability for the explosion.

On this issue the Sales Contracting Officer appears to us (Justice) to be in great difficulty, indeed, it seems that she is at this time unable to assemble and much less to evaluate the necessary facts to arrive at a decision. This is due to Italian law and procedures governing criminal proceedings. * * *

Therefore, it is abundantly clear that the Sales Contracting Officer will not be able to assemble and evaluate the facts bearing on the issue of liability in the explosion. If she were to rule in the light of this situation, she could do nothing more than substitute guess-work for a considered opinion.

We are therefore not faced with a situation where a criminal proceeding needs to be protected, rather, with a situation where the ongoing criminal proceeding and the attendant official secrecy make a responsible adjudication of the "civil aspects" of this controversy impossible until such time as the criminal proceeding shall be terminated. In this connection it should be mentioned that the contractor, disregarding the disputes clause of the contract, elected long before appealing to the ASBCA, to bring a civil suit against the United States and the Italian Government in the Tribunal of Trieste. It was for the purpose of defending the said civil suit that the US Department of Justice (Civil Division, Office of Foreign Litigation) became involved in this matter. By order of the said Italian court the civil proceedings were suspended until the conclusion of the criminal proceedings pending in the Tribunal of Pordenone. Such suspension is a statutory requirement of the Italian Code of Criminal Procedure. The rationale for said suspension is the inability of the civil court to intelligently evaluate the issues, as the evidence is inaccessible due to the said official secrecy. How, then, could the Sales Contracting Officer or the ASBCA rule on the issues of responsibility or fault in the explosion where the Italian civil judicial authorities feel unable to do so as long as the Italian criminal judicial authorities are barred from disclosing the evidence to them or anyone else?

Finally, a decision of denial of the claim by the Sales Contracting Officer or by the ASBCA may be an empty act or gesture, because the Italian contractor could, and would, have the issues litigated again by the Italian courts (unless they are found criminally liable in the Italian criminal proceeding, in which case the Italian civil court would be bound by the findings of fact of the Italian criminal court. * * *).

Clearly, the Department of Justice was advising the contracting officer not to decide the plaintiff's equitable adjustment claim because of the lack of information available and any decision might conflict with the criminal and civil matters pending in the Italian courts.

As earlier indicated, on January 20, 1984, the plaintiff filed its second appeal in the case with the Board (ASBCA No. 29227). In that appeal, the plaintiff contended that the matters involved in the appeal were separate and distinct from the matters in both the criminal and the civil action pending in the Italian courts. It also accused the contracting officer of simply refusing to render a final decision as part of a pattern of abusing the plaintiff. The plaintiff therefore requested that the Board issue its opinion on the merits of its equitable adjustment claim.

Government counsel did not answer the plaintiff's complaint before the Board, but again moved to dismiss the appeal without prejudice. The Government contended that the contracting officer was well within her rights not to render a final decision because the criminal and civil actions currently pending in the Italian courts precluded her access to information essential to her making a valid and informed decision. Furthermore, any decisions she would make would not be binding on the Italian courts.

On October 29, 1984, the Board issued its opinion agreeing with the defendant and dismissing the plaintiff's appeal without prejudice (ASBCA No. 29227). In its deci-

sion, the Board reviewed the plaintiff's pleadings before the Board as well as before the Italian courts and concluded that substantial similarities of issues were present. For instance, the Board focused on one issue involved in all the proceedings having to do with whether the shells involved were suitable for normal processing at a normal rate or whether they were unsuitable because of defects which necessitated "abnormal" processing procedures at lower rates of production. After reviewing the pleadings on this issue, the Board concluded that the claims were virtually the same in both the Board hearing and the Italian civil case. The Board's decision in pertinent part reads:

> We are satisfied that the Government's position is correct. Contrary to appellant's arguments, it is abundantly clear that at least in the civil action the same issues, among others, are involved. It is also clear that under the Italian legal system the criminal proceedings have priority. For that very reason the judge who has been assigned to resolve the civil case has placed it is [sic] abeyance until the criminal proceedings have been concluded. He was required to do so because all of the evidence which is collected during the investigative portion of the criminal proceedings is legally under a blanket of secrecy. That evidence cannot be released to anyone. Thus the contracting officer cannot have access to that information until a later time.
>
> The contracting officer has stated under oath that she does not have all of the information which she needs to act upon appellant's claim. Appellant contends that she does and it is clear that she does have some information as to some of the claims. We are not prepared to say that she has all of the information which she needs. To require a contracting officer to issue a final decision when not all of the necessary information is available would be substantially to harm the claims resolution process. For one thing, it would work to the detriment of contractors because the predictable reaction of contracting officers would be to sim-

ply deny the claims. The resolution of claims at the contracting officer level is most desirable from the viewpoint of both parties.

> Another very important consideration is that neither her decision nor ours would be binding on the Italian court. If we were to accept this appeal at this juncture and issue a ruling in favor of either party, the Italian court could and, if past experience is any harbinger of things to come, would ignore it in favor of its own judgment. We cannot see any justification in this case for mandating the performance of a useless act. Contrary to appellant's belief this is not an abuse of discretion but rather the most judicious use of our resources.
>
> This appeal is dismissed without prejudice to appellant refiling it at a later date. The contracting officer is directed to issue a final decision on appellant's claims within ninety (90) days after the date on which the civil proceeding which appellant has filed in the Italian courts has been finally concluded.

On June 17, 1985, this Wunderlich Act review action was filed in this Court.

### Discussion

On October 21, 1985, the defendant filed its motion to dismiss or, in the alternative, for summary judgment. In its motion to dismiss, the defendant asserts that this Court lacks jurisdiction to hear this matter under 28 U.S.C. § 1500, because the same claim is already pending in the Italian civil courts. In the alternative, the defendant argues on the merits that the ASBCA decisions are in accordance with law and supported by substantial evidence.

The plaintiff counters the defendant's motions and cross-moves for summary judgment by asserting that the Court has jurisdiction because the civil claims pending in the Italian courts are not similar to the claims pending in this Court. In addition, the plaintiff asserts that on the merits, the Board decisions were erroneous as a matter of law and not supported by substantial

evidence. Specifically, the plaintiff argues that the Board's dismissal of the plaintiff's first appeal was erroneous as a matter of law because no certification was required when one elects to proceed under the Disputes clause of a contract that predated the CDA. Second, the plaintiff contends that the Board's dismissal of the second appeal was erroneous as a matter of law (and not supported by substantial evidence) because the contracting officer did have enough information on which to base an informed final decision on the plaintiff's equitable adjustment claim, and that a dissimilar civil action pending in the Italian civil courts in no way impacted on the plaintiff's equitable adjustment claim that was later presented to the Board.

As earlier indicated, the plaintiff's contentions do not prevail.

### Jurisdiction

The Court begins the discussion by disagreeing with the defendant on its jurisdictional argument. The defendant has asserted that this Court lacks jurisdiction over this Wunderlich Act appeal because of 28 U.S.C. § 1500 (1982) which states:

> The United States Claims Court shall not have jurisdiction of any claim for or in respect to which the plaintiff or his assignee has pending in any other court any suit or process against the United States or any person who, at the time when the cause of action alleged in such suit or process arose, was, in respect thereto, acting or professing to act, directly or indirectly under the authority of the United States.

Defendant asserts that plaintiff's present action is identical to his civil claim in the Italian court, thus bringing the case within the purview of section 1500 and barring Claims Court jurisdiction.[2]

The plaintiff counters the defendant's argument by asserting that the cases before the Italian civil court and the ASBCA are not the same cases, but more importantly the matters before this Court and the Italian civil court do not involve the same legal and factual issues.

■ Although both cases arise from the same underlying circumstances, in particular the contract and the explosion, plaintiff now seeks in this Court considerably different relief than he seeks in the Italian court. At present, plaintiff's action is one for judicial review in the U.S. Claims Court of two allegedly erroneous Board decisions, and requesting that those decisions be overruled. Those decisions are essentially procedural decisions that have deferred any hearing on the merits until a more appropriate time, albeit they are final decisions. The only reason this matter is even here is because in Wunderlich Act review cases, this Court functions as an appellate reviewing body. In Italy, plaintiff's civil action is one on the merits using contract and tort theories of recovery and requesting monetary redress. As the court stated in *Pitt River Home and Agricultural Cooperative Ass'n v. United States*, 215 Ct.Cl. 959 (1977):

> The relevant question in assessing an asserted bar to jurisdiction in the [Claims Court] on the basis of § 1500 is not whether similar factual issues are involved in other, previously filed, actions but, instead, whether the same cause of action and claims for relief are asserted in the [Claims Court] and other courts. If so, then § 1500 is a jurisdictional bar.

*Pitt River, supra*, 215 Ct.Cl. at 961 (citations omitted). But if the causes of action and claims for relief in the two cases are dissimilar, as they are in the case at bar, this Court is not foreclosed from jurisdiction.

Stated succinctly, an action for judicial review under the Wunderlich Act, requesting relief from an agency decision, simply

---

**2.** Although this Court is not totally convinced that Congress intended the jurisdictional bar contained in 28 U.S.C. § 1500 (1982) to apply in the Claims Court to matters commenced in foreign courts, neither party has raised or argued the point and, thus, the matter will be left for another day. *But see Oakland Truck Sales, Inc. v. United States*, 138 Ct.Cl. 63, 149 F.Supp. 902 (1957).

cannot be deemed the same cause of action and request for relief as an action for monetary damages, whether or not the two arise from the same underlying facts. *See City of Santa Clara v. United States*, 215 Ct.Cl. 890 (1977) (although both cases were "based on the same nucleus of operative facts," the relief requested in each case was different, thus rendering section 1500 inapplicable). Therefore, defendant's motion to dismiss for lack of jurisdiction based on 28 U.S.C. § 1500 (1982) should be denied.

There is, however, another jurisdictional issue that, interestingly enough, has not been raised or argued by the defendant. That is the question of whether this Court has jurisdiction, in a Wunderlich Act review context, to decide a case that does not include a request for money judgment. Here, the plaintiff has only requested relief from two Board decisions that in effect deferred action on the plaintiff's equitable adjustment claim pending the outcome of other criminal and civil cases. The plaintiff, in essence, wants the Court to declare that the Board erred as a matter of law in its deferral decisions, remand the matter back to the Board, and order the Board to proceed with its claim. Nowhere in the plaintiff's complaint is there any demand for money judgment or indication that the plaintiff's administrative remedy is inadequate, thus necessitating a trial *de novo* in this Court under this Court's Tucker Act jurisdiction. 28 U.S.C. § 1491 (1982). Since what the plaintiff is really arguing for is declaratory judgment relief, this Court has significant doubts as to whether it has jurisdiction in this case. *See United States v. King*, 395 U.S. 1, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969). Nevertheless, since this matter is not free from doubt and has not been argued by the Government, the Court will proceed and decide the matter on the merits, which, in any event, this Court be-

lieves are clearly in the Government's favor.

### Merits

Plaintiff asserts that both appeal decisions of the ASBCA are erroneous as a matter of law and not supported by substantial evidence. This Court disagrees and affirms the second decision of the ASBCA.

■ Because this affirmance makes moot the issue raised in the first appeal to the Board (ASBCA No. 27753), the Court declines to rule on that appeal. The first appeal is moot because the plaintiff resubmitted its exact claim at issue in the first appeal (with reduced quantum) properly certified to the contracting officer approximately one month after its first appeal was dismissed by the Board without prejudice for failure to properly certify the claim.[3]

■ In a Wunderlich Act review, absent a showing by the plaintiff that the Board erred as a matter of law or found facts that were unsupported by substantial evidence, the Board's decision will be affirmed and the plaintiff's action in this Court will be dismissed. 41 U.S.C. §§ 321, 322 (1982); *Koppers Co. v. United States*, 186 Ct.Cl. 142, 147–51, 405 F.2d 554, 556–59 (1968); *Dale Ingram, Inc. v. United States*, 201 Ct. Cl. 56, 71, 475 F.2d 1177, 1185 (1973).

In the plaintiff's second appeal to the ASBCA, the Board found that the contracting officer was completely within her rights to defer a decision on the plaintiff's equitable adjustment claims until the Italian civil (and criminal) case had been terminated and she could gain access to appropriate contractual information (ASBCA No. 29227). The Board then dismissed the plaintiff's second appeal without prejudice, and directed the contracting officer to issue a final decision on the plaintiff's claim within 90 days after the plaintiff's civil claim in

---

3. In the event the Court would decide this matter on the merits, it would find that the plaintiff must conform to the statutory requirements for certification based on the analogous reasoning contained in several Court of Claims decisions. *See Paul E. Lehman, Inc. v. United States*, 230

Ct.Cl. 11, 673 F.2d 352 (1982); *W.H. Moseley Co. v. United States*, 230 Ct.Cl. 405, 677 F.2d 850 (1982), *cert. denied*, 459 U.S. 836, 103 S.Ct. 81, 74 L.Ed.2d 77 (1982); *Skelly and Loy v. United States*, 231 Ct.Cl. 370, 685 F.2d 414 (1982).

the Italian civil court had been concluded. The plaintiff has failed to present anything in this action that convinces the Court that the Board erred as a matter of law or found facts that were not supported by substantial evidence.

■ The Board's decision to defer consideration of the claim was based on the similarity of the several proceedings; the lack of availability of information needed to resolve the plaintiff's equitable adjustment claim because of the pendency of the Italian criminal proceedings; and the factor of judicial economy and efficiency since neither the ASBCA's nor the contracting officer's decision would be binding on the Italian court. The Board took into account the contracting officer's sworn statement that she did not have all the information necessary to render a decision because of the pendency of the two Italian proceedings and her reliance on a Department of Justice letter which advised her not to proceed with the plaintiff's contractual claim. Moreover, the Board made a careful comparison of the plaintiff's complaints filed in the Italian civil court and before the ASBCA, and found similar issues in both. It is very possible that the disposition of the Italian civil suit will have a profound effect on plaintiff's case before the ASBCA, and will render unnecessary disposition of the matter as an independent suit before any United States authority.

In similar situations in the past, this Court has recognized the wisdom of staying an action pending the completion of a related proceeding involving the same party and issues in order to promote the interests of "comity, justice or judicial administration." *See City of Santa Clara v. United States, supra; Truckee-Carson Irrigation District v. United States*, 223 Ct.Cl. 684 (1980). As the Supreme Court recognized in *Landis v. North American Co.*, 299 U.S. 248, 57 S.Ct. 163, 81 L.Ed. 153 (1936):

> [T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.

*Landis, supra*, 299 U.S. at 254, 57 S.Ct. at 165.

The ASBCA's deferral of consideration of the claim promotes judicial economy and efficiency. The careful comparison of the complaints filed in the Italian civil action and the ASBCA proceeding undertaken by the ASBCA clearly establishes that the same issues and relief are presented in both proceedings. The decisions in the related criminal and civil actions will likely be dispositive or determinative of the claim. Moreover, as recognized by the ASBCA, it would be a waste of resources to resolve the claim at this juncture since neither the contracting officer's nor the ASBCA's decisions would be binding on the Italian court. Under these circumstances, it would be inefficient, uneconomical, and unnecessarily duplicative to resolve the claim prior to the disposition of the Italian civil action. *See Armstrong v. United States*, 4 Cl.Ct. 269 (1984); *Arizona Helicopters, Inc. v. United States*, 4 Cl.Ct. 662 (1984). Furthermore, since the plaintiff filed in the Italian civil court first, comity dictates that litigation continue in that court. *Tecon Engineers, Inc. v. United States*, 170 Ct.Cl. 389, 394, 343 F.2d 943, 946, *cert. denied*, 382 U.S. 976, 86 S.Ct. 545, 15 L.Ed.2d 468 (1966).

In addition, the ASBCA properly recognized the priority of criminal proceedings and the lack of necessary information available to the contracting officer to resolve the claim because of the pendency of the Italian criminal proceedings. This is directly analogous to other cases where this Court has stayed civil actions pending criminal investigation and prosecution of the parties and issues involved, in order to avoid the conflicts inherent in concurrent proceedings. *See, e.g., Luigi Goldstein, Inc. v. United States*, 217 Ct.Cl. 733, *cert. denied*, 439 U.S. 1002, 99 S.Ct. 611, 58 L.Ed.2d 677 (1978); *Litton Systems, Inc. v. United States*, 215 Ct.Cl. 1056 (1978); *Peden v. United States*, 206 Ct.Cl. 329, 338–39, 512 F.2d 1099, 1103–04 (1975).

For the same reasons stated in the above-cited opinions, it was reasonable and proper for the ASBCA to defer final decision on plaintiff's claim until after completion of the Italian civil action.

Furthermore, plaintiff has most certainly not been denied his day in court. The ASBCA has dismissed without prejudice, and this Court is doing the same. Thus, plaintiff will have his chance in the Italian court and then, if necessary, again before the contracting officer (ASBCA).

For all of the above reasons then, this Court is satisfied that there is substantial evidence in the record to support the ASBCA's findings and that there are no errors as a matter of law.

## CONCLUSION

For the foregoing reasons, the plaintiff's cross-motion for summary judgment is denied, the defendant's motion to dismiss for lack of jurisdiction is denied, the defendant's cross-motion for summary judgment is granted and the plaintiff's action is to be dismissed without prejudice to the refiling of its administrative claim.

Costs to the prevailing party.