**NORTHROP CORPORATION,
NORTHROP ELECTRONICS
SYSTEMS DIVISION**

v.

**The UNITED STATES.**

**No. 91–1035C.**

United States Court of Federal Claims.

March 17, 1993.

William W. Thompson, Jr., Alexandria, VA, for plaintiff.

George M. Beasley, III, Washington, DC, with whom was Asst. Atty. Gen. Stuart M. Gerson, for defendant.

## ORDER

YOCK, Judge.

This Government contract case comes before this Court on plaintiff's motion for certification of an interlocutory appeal, pursuant to 28 U.S.C. § 1292(d)(2) (1988), and for a lifting of the stay, issued by this Court on March 20, 1992, for the purpose of allowing discovery to proceed. Specifically, the plaintiff here requests certification of the question of whether the United States Court of Federal Claims has jurisdiction over *qui tam* plaintiffs who have asserted False Claims Act allegations against a Government contractor. In addition, the plaintiff also asks that this Court allow the parties to resume discovery for the dispute in the case at bar. For the following reasons, this Court denies the plaintiff's motion for certification of an interlocutory appeal and for a lifting of the stay on discovery.

### Factual Background

On March 20, 1992, after numerous briefs and two oral hearings, this Court issued its order granting the defendant's motion for a stay in this contract claim (CDA) matter.[1] This order was issued even though a district court in California had earlier issued its order staying a related case involving allegations of false claims initiated by *qui tam* plaintiffs against Northrop Corporation, and later joined by the Government, in order to allow the CDA action in the Court of Federal Claims to proceed to completion.[2] The district court had issued its stay under the legal assumption that the Court of Federal Claims had jurisdiction over all of the false claims assertions that were present in the district court action and could assume jurisdiction over all of the parties to that action, including the *qui tam* plaintiffs. After careful consideration, however, this Court came to the conclusion that, although this Court had concurrent jurisdiction in the CDA action over the false claims matters asserted in the district court between Northrop Corporation and the Government, it did not have jurisdiction over the *qui tam* plaintiffs, who were, of course, private third parties. Based then, on this Court's conclusion that it did not have jurisdiction over the *qui tam* plaintiffs in the district court action, and on strong considerations of comity and judicial economy, this Court

---

1. The Court's March 20, 1992 order granting the defendant's motion to stay has a more complete recitation of the factual background involved in this matter.

2. *United States ex rel., David Peterson and Jeff Kroll v. Northrop Corp.,* CV 87–03698 KN (GHKx) (C.D.Cal. Oct. 23, 1991).

granted the defendant's motion to stay the CDA action in this Court to allow the parties to pursue reconsideration of the district court's stay order or take other appropriate action.

The plaintiff herein responded to the Court's March 20, 1992 order by filing a motion on March 30, 1992, requesting certification for interlocutory appeal of this Court's stay order to resolve the legal impasse. At approximately the same time, the Government filed a motion in the district court action seeking reconsideration of the district court's prior stay order, and the plaintiff filed its motion in district court seeking clarification of the district court's stay order. Based primarily on the parties' respective motions filed in the district court, this Court, on May 21, 1992, denied the plaintiff's motion for certification without prejudice to renewal once action had been completed on the pending motions filed in the district court. On July 1, 1992, during a status conference, this Court again denied the plaintiff's oral request for an interlocutory appeal without prejudice pending the district court's decision on the parties' respective motions. On September 16, 1992, the district court filed its memorandum opinion and order in which it granted the Government's motion for reconsideration, vacated its earlier stay, and ordered the *qui tam* false claims action in the district court to proceed to completion. In its order, the district court stated:

> Upon further consideration and reflection, the Court GRANTS the United States' Motion for Reconsideration of this Court's October 23, 1991 Order and lifts the stay on the proceedings before this Court. The Court imposed the stay in the belief that the Claims Court had jurisdiction over both the plaintiffs' False Claims Act allegations against Northrop and Northrop's Contract Disputes Act allegations against the government. Given that the Claims Court appeared to be the only forum capable of adjudicating all of these claims, the Court felt that the interests of both fairness and judicial economy would be most effectively pro-

moted by allowing the Claims Court to hear this case. In the intervening months, however, the Claims Court has found that it lacks jurisdiction over the False Claims Act allegations and little if any progress has been made in either this case or the related case in the Claims Court.

> Given the fact that this case was filed some five years ago and that so little progress has been made since last October, the Court now feels that the interests of justice would best be served by removing its stay and pressing on with the case in this Court. Even if the Claims Court granted Northrop certification to file an interlocutory appeal, it would probably take the federal circuit at least seven to eight months to render a decision. Given that time frame, the Court feels that the stay in this Court should be lifted.

*United States ex rel., David Peterson and Jeff Kroll v. Northrop Corp.*, CV 87–03698 KN (GHKx), at 1–2 (C.D.Cal. Sept. 16, 1992).

The plaintiff thereafter, on October 16, 1992, filed afresh its present motion for certification of an interlocutory appeal to the United States Court of Appeals for the Federal Circuit of this Court's stay order, and motion for the lifting of this Court's stay order for the purpose of allowing discovery to proceed.

### Discussion

#### A. Certification for Interlocutory Appeal

In the plaintiff's motion, it has asserted that this Court should certify for interlocutory review this Court's stay order of March 20, 1992, or at least that part of the order,[3] that dealt with the question of whether or not this Court has jurisdiction over *qui tam* plaintiffs that have asserted False Claims Act allegations against a Government contractor. It argues that the matter involves a "fundamental conflict" in jurisdiction between the district courts and this Court that must be resolved and can

---

**3.** Presumably the plaintiff is not interested in Federal Circuit review of that part of the March 20, 1992 stay order that was based on the legal principles of comity and judicial economy.

only be resolved by the Federal Circuit. Further, it alleges that the jurisdictional conflict has broad policy implications in the sense that it "strips the Court of its established jurisdiction over FCA counterclaims," which is "fundamental to the scope of this Court's future jurisdiction." Finally, it believes that the CDA creates a "statutory primacy over FCA claims," and consequently, that this Court's stay reversed that primacy. Thus, it believes that the issue involves a "controlling question of law as to which there is a substantial ground for difference of opinion," which should be reviewed by the Federal Circuit because it "would advance the ultimate termination of the litigation."

The Government, for its part, vigorously opposes the plaintiff's motion. It does so for several reasons. First, it does not believe that there is a "substantial ground" for a difference of opinion in that the district court, upon review of this Court's stay order, reversed itself and ordered the case to go forward in that court. Second, it believes that the law, contained in 31 U.S.C. § 3729 *et seq.*, is clear that in a *qui tam* case, only the district court can adjudicate all of the claims of all of the parties asserting fraud charges against a Government contractor. Third, the Government does not find any merit in the plaintiff's argument that "simply because this is a Contract Disputes Act case, normal principles of comity and judicial economy should not apply, and that it was error rising to the level of a matter of important public policy." Fourth and finally, the defendant believes that the district court action is "much further advanced" than this case, and that a finding of fraud in the district court case would potentially dispose of any further action in this CDA case and thus it does not believe that certification would "materially advance the final disposition" of this case.

As earlier indicated, this Court agrees with the position of the Government in this certification matter.

While certification of an interlocutory appeal pursuant to section 1292(d)(2) of title 28 remains within the discretion of the trial judge, *Aleut Tribe v. United States*, 702 F.2d 1015, 1019 n. 7 (Fed.Cir.1983), limited case law exists for guidance in this area. *Favell v. United States*, 22 Cl.Ct. 132, 142 (1990). However, as the operative language and functions of section 1292(d)(2) read identical to the statutory standard of certification employed by the United States District Courts in 28 U.S.C. § 1292(b) (1988), the Court of Federal Claims and the Federal Circuit have regarded section 1292(b) as "persuasive" in construing section 1292(d)(2). *United States v. Connolly*, 716 F.2d 882, 885 (Fed.Cir.1983), *cert. denied*, 465 U.S. 1065, 104 S.Ct. 1414, 79 L.Ed.2d 740 (1984); *Favell*, 22 Cl.Ct. at 142 n. 12, 142–43. As such, this Court takes notice of the extraordinary nature of a request for an interlocutory appeal pursuant to section 1292(d)(2) and compares both the legislative history and application of that section with that of section 1292(b).

■ Describing the rationale for authorization of an interlocutory appeal from the judgment of a district court, the legislative history of section 1292(b) makes clear reference to the extraordinary nature of the procedure:

[W]e * * * have reached the conclusion that provision should be made for the allowance of appeals from the interlocutory orders in those exceptional cases where it is desirable that this be done to avoid unnecessary delay and expense and that the danger of opening the door to groundless appeals and piecemeal litigation can be avoided by proper limitations to be included in the amendatory statute.

* * * * * *

Your Committee is of the view that the appeal from interlocutory orders thus provided should and will be used only in exceptional cases where a decision of the appeal may avoid protracted and expensive litigation, as in antitrust and similar protracted cases, where a question which would be dispositive of the litigation is raised and there is serious doubt as to how it should be decided, * * *. It is not thought that district judges would grant the certificate in ordinary litigation which could otherwise be promptly dis-

posed of or that mere question as to the correctness of the ruling would prompt the granting of the certificate.

Report of the Committee on Appeals from Interlocutory Orders of the District Courts, Sept. 23, 1953, *reprinted in* 1958 U.S.C.C.A.N., 85th Cong., 2d Sess., at 5260–61. Thus, as the legislative history to section 1292(b) indicates, an interlocutory appeal occurs "only in exceptional cases" so to avoid unnecessary delay and expense as well as piecemeal litigation. Similarly, as the Claims Court has recognized, in analogizing section 1292(b) to section 1292(d)(2): "The legislative history of the statute, as well as the historic, and often repeated, policy against interlocutory appeals, suggests that great restraint should be used in permitting interlocutory appeals." *Favell*, 22 Cl.Ct. at 143. Therefore, whether applying section 1292(b) or section 1292(d)(2), this Court finds that the granting of an interlocutory appeal should be available only in the exceptional case. *See Weeks Dredging & Contracting, Inc. v. United States*, 11 Cl.Ct. 37, 56 (1986) (recognizing that "it is the *unusual case* that warrants such a procedure") (emphasis added).

To determine what constitutes such an "exceptional case," one must start by looking at the provision of section 1292(d)(2). This section describes the statutory requirements for certification as follows:

> When any judge of the United States [Court of Federal Claims], in issuing an interlocutory order, includes in the order a statement that a controlling question of law is involved with respect to which there is a substantial ground for difference of opinion and that an immediate appeal from that order may materially advance the ultimate termination of the litigation, the United States Court of Appeals for the Federal Circuit may, in its discretion, permit an appeal to be taken from such order, if application is made to that Court within ten days after the entry of such order.

28 U.S.C. § 1292(d)(2). Resultingly, the Court of Federal Claims has recognized therefrom three distinct criteria for certification of an interlocutory appeal, including:

(1) a controlling question of law; as to which there is

(2) substantial ground for difference of opinion; and that

(3) possible material advancement of the ultimate termination of the litigation will occur if the certification order is issued.

*Favell*, 22 Cl.Ct. at 143.

The first criterion of section 1292(d)(2) requires a "controlling question of law" still at issue. In defining this criterion, albeit in another analogy between application of section 1292(b) and section 1292(d)(2), the Claims Court has held: "[q]uestions of law have only been deemed 'controlling' under this statute, if they materially affect issues remaining to be decided in the trial court." *Brown v. United States*, 3 Cl.Ct. 409, 411 (1983) (emphasis omitted) (citing *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1027 (9th Cir.1982), *aff'd, Arizona v. Ash Grove Cement Co.*, 459 U.S. 1190, 103 S.Ct. 1173, 75 L.Ed.2d 425 (1983)).

■ As the district court has now vacated its stay and ordered the *qui tam* False Claims Act suit back on the fast track, the question of whether or not this Court has jurisdiction over the same *qui tam* parties and their False Claims Act claims no longer affects *any* issue in *this* proceeding. There is no controlling question at law still at issue. There is absolutely no question about the district court's jurisdiction over *qui tam* actions. Both courts agree on that. Also, this Court has made it clear that it has determined that it does not have jurisdiction over *qui tam* plaintiffs and their claims in this Court. One must assume that the district court believes that also, or at least is deferring to this Court's ruling on its own jurisdiction because it did, in fact, vacate its prior stay, and order that case to proceed to completion in the district court. There is, therefore, no jurisdictional impasse. If there is no jurisdictional impasse, there is no real case in controversy. Appellate courts are not in the business of resolving issues that do not need to be resolved. Put another

way, it is a matter of mootness.[4] Thus, this Court does not believe that the plaintiff has met the first requirement for certification. There is no "controlling question of law" still at issue.

■ The second criterion of section 1292(d)(2) requires a "substantial ground for difference of opinion." Plaintiff, however, has not demonstrated any "substantial" basis for an assertion of jurisdiction over *qui tam* cases by the Court of Federal Claims. While this Court cannot state with complete certainty that the *qui tam* jurisdictional question remains free from cognizable debate, this Court finds absolutely no evidence of any "*substantial* ground for difference of opinion." Indeed, the vast weight of the evidence tends to disfavor jurisdiction for the reasons set forth in this Court's opinion of March 20, 1992. *Cf. Litton Sys., Inc. v. United States*, 27 Fed. Cl. 306 (1992) (implying preference for *qui tam* suits in the district court). In addition, in contrast to the reading proffered by the plaintiff, this Court finds no grounds for a substantial difference of opinion in the district court's memorandum opinion and order of September 16, 1992. *See United States ex rel., David Peterson and Jeff Kroll v. Northrop Corp.*, CV 87–3698 KN (GHKx), at 2 (C.D.Cal. Sept. 16, 1992) (ruling, simply, that "the interests of justice would best be served by removing its stay and pressing on with the case in this court"). Again, reemphasizing the extraor-

dinary nature of an interlocutory appeal, this Court finds no "substantial ground for difference of opinion."

■ The third criterion of section 1292(d)(2) requires that "possible material advancement of the ultimate termination of the litigation will occur if the certification order is issued." Significantly, even if plaintiff could meet the first two criteria of section 1292(d)(2), this criterion abrogates any chance of success in defining an argument for certification of interlocutory appeal under the present circumstances. For, if the issue of *qui tam* jurisdiction by the Court of Federal Claims were certified to the Federal Circuit, the result would not eventuate in the ultimate termination of the instant dispute but would create additional litigation. Even if the Federal Circuit were to accept interlocutory review in this case and ultimately determine that this Court has jurisdiction over *qui tam* plaintiffs, that would leave the unadopted claims (those not adopted by the U.S. Government) of the *qui tam* plaintiffs still intact in the district court action which would ultimately have to be dealt with. Far better that these actions proceed with some logical order, which is what is currently happening. Again, such a course of action (*i.e.,* interlocutory appeal) would clearly fly in the face of judicial economy, resulting not in a material advancement but in a substantial retreat from resolution of the litigation at bar. As certification of

**4.** The mootness doctrine originates from the "case or controversy" requirement of Article III of the United States Constitution. *See De Funis v. Odegaard*, 416 U.S. 312, 316, 94 S.Ct. 1704, 1705–06, 40 L.Ed.2d 164 (1974) ("The inability of the federal judiciary 'to review moot cases derives from the requirement of Art. III of the Constitution under which the exercise of judicial power depends upon the existence of a case or controversy.'") (quoting *Liner v. Jafco, Inc.,* 375 U.S. 301, 306 n. 3, 84 S.Ct. 391, 394 n. 3, 11 L.Ed.2d 347 (1964)). Federal courts have applied the term "moot" in the following ways:

(1) [S]ometimes it is used broadly to indicate that the question presented to the court did not constitute a justiciable issue, although no change in facts or circumstances had occurred since the rendition of the judgment sought to be reviewed; and (2) sometimes it is used in a more technical sense as indicating

that after a rendition of a judgment an event has occurred which renders moot what, except for such event, might be a justiciable issue.

Ernest H. Schopler, Annotation, *What Circumstances Render Civil Case, or Issues Arising Therein, Moot so as to Preclude Supreme Court's Consideration of Their Merits*, 44 L.Ed.2d 745, 750 (1976). This Court's application of mootness involves only the latter meaning. *See generally* Kipp D. Snider, Note, *Vacatur: The Vacatur Remedy for Cases Becoming Moot upon Appeal: In Search of a Workable Solution for the Federal Circuits*, 60 Geo.Wash.L.Rev. 1642, 1643 (1992) ("The doctrine dictates that federal courts are empowered to decide cases only when the decision will affect the rights of the litigants. Thus, when the facts of a case change such that a judicial decision on the merits would be meaningless, courts are without power to decide the case.") (footnotes omitted).

the issue proffered by the plaintiff for interlocutory appeal would create unnecessary delay and expense as well as piecemeal litigation, and thus contrast directly with the third statutory criterion of section 1292(d)(2), this Court finds that no "possible material advancement of the ultimate termination of the litigation will occur if the certification order is issued."

Therefore, as the proffered issue for certification of an interlocutory appeal remains moot and, pursuant to section 1292(d)(2), the plaintiff demonstrates no other persuasive grounds for certification of an interlocutory appeal, this Court denies plaintiff's motion for certification of an interlocutory appeal regarding *qui tam* jurisdiction in this Court to the Federal Circuit.

### B. Lifting of Stay on Discovery

In the instant motion, plaintiff also argues that "basic fairness demands that this Court's stay be lifted for the limited purpose of allowing discovery to proceed on Northrop's CDA claims." In contrast, defendant argues that comity and judicial economy require continuance of the stay until resolution of the district court proceeding.

#### 1. *Comity*

 In this motion, the defendant has argued that comity requires continuance of the instant stay. As set forth in this Court's order of March 20, 1992, the Court of Federal Claims follows the general rule that where more than one court has concurrent jurisdiction over the subject matter of a case, the "doctrine of comity" requires that litigation continue in the court in which the suit first began. *Cantieri Rovina v. United States*, 10 Cl.Ct. 634, 642 (1986) (citing *Tecon Eng'rs, Inc. v. United States*, 170 Ct.Cl. 389, 394, 343 F.2d 943, 946 (1965), *cert. denied*, 382 U.S. 976, 86 S.Ct. 545, 15 L.Ed.2d 468 (1966)). In *Marathon Oil Co. v. United States*, 16 Cl.Ct. 332 (1989), the Claims Court further defined this doctrine:

> Comity is an equitable doctrine, intended to promote judicial efficiency. It applies where the 'same parties and issues are before two or more courts with concurrent jurisdiction.' Where these conditions are met, the court hearing the second filed action can, within the exercise of its discretion, dismiss in favor of the first.

*Id.* at 340 (citations omitted). Based in part on the doctrine of comity, this Court, in its March 20, 1992 order, previously granted a stay of proceedings, until final judgment by the district court in the *qui tam* suit against the plaintiff. For purposes of the instant motion, this Court finds the same reasons persuasive to continue the stay.

In the instant dispute over the lifting of the stay on discovery, and relying essentially on the reasoning of its earlier motion to stay proceedings, the defendant proposes the same grounds for continuance of the present stay. Citing numerous board of contract appeals decisions, defendant demonstrates how the boards have commonly stayed claims under the Contract Disputes Act where the Government had filed either criminal or civil fraud actions against the contractor in another forum. *See, e.g., Hardrives, Inc.*, IBCA Nos. 2319, 2375, 2414, 2510, 2511, 2514, 2515, 2516, 2518, 2519, 2524, 91–2 BCA ¶ 23,769, 1991 WL 22100; *Triax Co.*, ASBCA No. 33,899, 88–3 BCA ¶ 20,830, 1988 WL 58843; *Fidelity Constr. Co.*, DOT CAB Nos. 1113, 1123, 80–2 BCA ¶ 14,819, 1980 WL 2401, *aff'd.* While the reasons for the holdings of these boards are arguably similar to the case at bar, these decisions demonstrate the deferral of board action, pending the resolution of suits based on fraud, because of the administrative nature of the boards, *Bryant Co.*, HUD BCA Nos. 75–29, 75–30, 77–1 BCA ¶ 12,467, 1977 WL 2500; *Hillside Metal Prods., Inc.*, GSBCA Nos. 4489, 4496, 76–2 BCA ¶ 12,192, 1977 WL 2433; and because the boards lack jurisdiction over fraud, *Meredith Relocation Corp.*, GSBCA Nos. 9124, 9844, 10,077, 90–2 BCA ¶ 22,677, 1989 WL 163572; *TDC Management Corp.*, DOT BCA No. 1802, 90–1

BCA ¶ 22,627, 1989 WL 226084. Considering the administrative nature of these board hearings and the different jurisdictional authorities, parallelisms between these board cases and the instant dispute are not especially helpful as analogies for this Court to utilize in our circumstances.

However, this Court finds defendant's recitation of United States Court of Claims precedent as more appropriate. For example, defendant cites *Truckee–Carson Irrigation Dist. v. United States*, 223 Ct.Cl. 684, 685 (1980), wherein the Court of Claims stayed a suit for a money claim pending resolution of a suit for injunctive and declaratory action in the district court. Finding a "close bond between the two litigations," the court held:

> So far as this court can tell, the disposition of that suit may very well have a profound effect on the instant case and may, indeed, make it unnecessary to try or dispose of the present suit as an independent matter. There is undoubtedly a close bond between the two litigations, acknowledged by both parties, which counsels that we await the completion of the District Court action which was commenced first and has progressed much farther.

*Id.* As in the case of *Truckee–Carson,* the case at bar has been pending some five and one-half years in the district court (since 1987) and the result could have "a profound effect" on the instant case. Pursuant to this possibility, this Court recognizes a "close bond" between the two litigations at issue. Thus, application of the doctrine of comity to the instant case seems appropriate.

■ As the Claims Court explains in *Armstrong v. United States*, 4 Cl.Ct. 269, 271 (1984), however, the stay of a court proceeding pending a district court decision generally depends on the threat of inconsistent decisions. *But see UNR Indus., Inc. v. United States*, 962 F.2d 1013, 1021–22 (Fed.Cir.) (requiring dismissal, not a stay of proceedings, if the same claim), *cert. granted sub. nom., Keene Corp. v. United States,* — U.S. —, 113 S.Ct. 373, 121 L.Ed.2d 285 (1992). In the case at bar, even if the plaintiff were to prevail at the district court (as defendant), the plaintiff argues that defendant would face a more stringent burden of proof for fraud in the instant proceeding. *See Sterling Millwrights, Inc. v. United States,* 26 Cl.Ct. 49, 111 (1992) (reciting the clear and convincing standard of the Forfeiture Statute, 28 U.S.C. § 2514). Pursuant to this disparity, plaintiff suggests that no threat of inconsistent decision exists because of the disparate standards. The Claims Court has held, however, that a "close bond" may comprise substantially similar, and not necessarily parallel, issues. *See Oak Forest, Inc. v. United States,* 23 Cl.Ct. 90, 98 (1991) (granting a stay of proceedings "largely duplicated in the district court"). Applying the same approach in the present case, the close bond between the two litigations favors deferral of the instant proceeding.

It should also be noted that, in at least one recent case, the Court of Federal Claims has even dismissed a CDA action over which it acknowledged having jurisdiction in order not to interfere with an ongoing *qui tam* False Claims Act suit in the district court. As the Court stated in that case:

> Even if plaintiff's contention has merit—a point on which we need express no opinion—wise judicial administration still would counsel that we refrain from entertaining a lawsuit whose issues are integral to an action well underway in another forum.
>
> Restraint is particularly appropriate in cases, such as this one, where the parallel litigation involves issues of fraud. The vindication of the public interest in insuring the integrity of federal contracts—the essence of the fraud action—demands the suspension of usual contract procedures in order to allow the resolution of the fraud issues to proceed uninterrupted. *See United States v. Adams,* 74 U.S. (7 Wall.) 463, 477–78, 19 L.Ed. 249 (1868) (suspected fraud in execution of military contracts justified suspension of contract payments pending investigation); *Litton Systems, Inc. v. United States,* 215 Ct.Cl. 1056 (1978) (suit to enforce payment of favorable contract board decision stayed to accommodate concurrent criminal False Claims Act litigation). We adhere to these precedents.

Although the court has jurisdiction over the cause of action alleged in the complaint, no interest is served by our exercise of that jurisdiction given the pendency of the same issues in the district court. Therefore, we dismiss without prejudice.

*Litton Sys., Inc. v. United States*, 27 Fed. Cl. 306, 310 (1992).

Thus, affirming application of the doctrine of comity to the instant proceedings, this Court defers further action on plaintiff's contract dispute in the Court of Federal Claims pending resolution of the *qui tam* proceeding in the district court. Yet, while the above discussion demonstrates the grounds for maintenance of the present stay, it is judicial economy which primarily persuades this Court to deny the plaintiff's motion to lift the present stay "for the limited purpose of allowing discovery."

### 2. *Judicial Economy*

 Judicial economy constitutes the defendant's second reason for continuance of the instant stay. Judicial economy encompasses many rationales, but the controlling interest behind the concept involves "sound judicial administration." *Cherokee Nation v. United States*, 23 Cl.Ct. 735, 739 (1991) (quoting *Allis–Chalmers Corp. v. Philadelphia Elec. Co.*, 521 F.2d 360, 365 (3d Cir.1975)). As recently recognized by the Federal Circuit, moreover, judicial economy also implicates "[j]udicial concern about duplicative litigation due to jurisdictional conflicts." *Far West Fed. Bank, S.B. v. OTS*, 930 F.2d 883, 891 (Fed.Cir. 1991). In addressing these concerns, the Federal Circuit stated:

> To assign to different courts the determination of various aspects of the same complex transaction; to redevelop the identical facts in order to permit two separate trial courts and two independent appellate avenues to consider alternative theories of relief; should not be imposed unless clearly required by stat-

ute. In today's climate of burgeoning litigation and strained resources, duplication of litigation serves no congressional purpose; it squanders judicial, governmental, and private resources.

*Id.* Affirming these judicial concerns in the case at bar, this Court finds that judicial economy demands resolution of the district court action prior to continuance of efforts toward resolution of the instant proceeding. For the forgoing reasons, this finding applies equally to the stay on discovery.

Plaintiff requests a lifting of the stay solely for discovery purposes and, emphasizing the limited purpose of the motion, argues substantial prejudice in case of an adverse ruling. First, plaintiff suggests the lack of an "even balance" between allowing the Government to proceed in the *qui tam* suit in the district court but imposing a stay on the instant proceeding. Second, plaintiff warns of the loss of witnesses and documents pursuant to the downsizing of the defense and aerospace industries. Highlighting the extensive discovery conducted by both parties in the district court proceeding, however, defendant asserts a failure of judicial economy should both the district court and instant suit proceed simultaneously. Based on the unpersuasive arguments of plaintiff, and in the interest of avoiding duplicative discovery proceedings, this Court rules in favor of judicial economy by denying the motion to lift the present stay.

To support continuance of the present stay on the grounds of judicial economy, the defendant refers to several Court of Claims cases which apply judicial economy standards in the granting of a stay. Defendant cites *Hossein v. United States*, 218 Ct.Cl. 727, 728 (1978), *overruled on other grounds, UNR Indus., Inc. v. United States*, 962 F.2d 1013 (Fed.Cir.), *cert. granted sub. nom, Keene Corp. v. United States*, —— U.S. ——, 113 S.Ct. 373, 121 L.Ed.2d 285 (1992),[5] wherein the Court of

---

**5.** Pursuant to 28 U.S.C. § 1500 (1988), the Federal Circuit expressly overruled *Hossein* because the Court of Claims had stayed, and not dismissed, *the same claim* in the Court of Claims as

in the district court. *UNR*, 962 F.2d at 1022 n. 3. Section 1500 states:

> The United States [Court of Federal Claims] shall not have jurisdiction of any claim for or

Claims granted a stay of a money claim pending resolution of a similar case in the district court. As grounds for the stay, the court recited not only the doctrine of comity but also judicial economy and the avoidance of piecemeal litigation. *Id.* at 729. Defendant also cites *Corning Glass Works v. United States*, 220 Ct.Cl. 605, 605 (1979), wherein the Court of Claims granted a stay of a patent infringement suit pending resolution of a similar case in the district court. Instead of ruling on the basis of comity, the court granted the stay in order "to serve the interest of judicial economy *and to avoid duplicative discovery proceedings.*" *Id.* (emphasis added). This Court finds these references persuasive. For the same reasons outlined above, allowance of discovery in both the instant and the district court proceedings would tend to promote piecemeal litigation and would result, in what this Court considers, duplicative discovery proceedings. Thus, based on judicial economy, this Court rejects plaintiff's assertion of an "uneven balance" among the two litigations.

In opposing continuance of the present stay, the plaintiff also asks this Court to lift the stay for the limited purpose of allowing discovery before "witnesses disappear, document [sic] are lost, and memories fade." Referencing the downsizing of the defense industry, lay offs, and retirements, plaintiff seeks authority to document and record facts involving its contract claims. However, this Court sees the problems anticipated by plaintiff as remedied by the plaintiff without action by this judicial body. If plaintiff fears loss of memory following downsizing of the defense and aerospace industries, lay offs, and retire-

ments, then plaintiff may depose its own employees without the necessity for authorization by this Court. Quite simply, this Court cannot foresee the substantial prejudice claimed by plaintiff upon the continuation of the present stay.

Moreover, if plaintiff fears loss of documents or memory on the part of the Government, this Court believes that simultaneous discovery in both the district court and the case at bar would result in unnecessary and duplicative efforts. *See Thompson–Hayward Chem. Co. v. Rohm & Haas Co.*, 745 F.2d 27, 30–31 (Fed.Cir. 1984) (dissuading the repetition and duplication of discovery in a patent case). As of August 1991, the parties in the district court case, which was commenced in 1987, had deposed twenty-five witnesses, identified 280 documents, and traded numerous requests for production of documents and interrogatories. As of the district court's lifting of the stay on the *qui tam* action on September 16, 1992, the parties have assuredly progressed even further into the discovery matters as it appears that the district court action is moving forward on a fast track. In light of the significant discovery in the district court proceedings already, this Court considers lifting the present stay as contrary to the goals of judicial economy. Thus, on those grounds, this Court also denies the plaintiff's motion to lift the present stay.

Therefore, with regard to the principle of comity and in the interest of judicial economy, this Court denies plaintiff's motion to lift the stay on discovery. Thus, as recited in this Court's order of May 20, 1992, this Court believes that the instant action should be stayed pending resolution of the

---

in respect to which the plaintiff or his assignee has pending in any other court any suit or process against the United States or any person who, at the time when the cause of action alleged in such suit or process arose, was, in respect thereto, acting or professing to act, directly or indirectly under the authority of the United States.

28 U.S.C. § 1500. Based on this statutory language, the Federal Circuit criticized and overruled several Court of Claims cases, including *Hossein*, where the court had stayed a claim pending resolution of the same claim in another court. *UNR*, 962 F.2d at 1021–22. Under such

circumstances, the Federal Circuit found dismissal, and not a stay of the action, as proper. *Id.* at 1021. In the instant case, however, plaintiff maintains a contract action in this Court but defends a *qui tam* action in the district court. While these claims are related, pursuant to the Government's counterclaims of fraud under the same contract, they are not the same claim. Thus, dismissal is not proper. On the other hand, the "close bond" between the claims persuades this Court to stay the instant proceedings pending resolution of the district court action. *See Truckee–Carson Irrigation Dist. v. United States*, 223 Ct.Cl. 684, 685 (1980).

805

proceedings in the United States District Court for the Central District of California.

## CONCLUSION

For the reasons stated above, this Court denies the plaintiff's motion for certification of an interlocutory appeal and for a lifting of the stay on discovery. No costs.

IT IS SO ORDERED.