78 F.3d 564
 77 A.F.T.R.2d 96-1294, 96-1 USTC P 50,174
 HOUSTON INDUSTRIES INCORPORATED and Subsidiaries, Plaintiff-Appellee,
v.
The UNITED STATES, Defendant-Appellant.
 No. 95-5110.
 United States Court of Appeals,
Federal Circuit.
 March 11, 1996.
Rehearing Denied; Suggestion for Rehearing In Banc Declined
April 16, 1996.
 
 Appealed from the United States Court of Federal Claims; Bruggink, Judge.
 Gregory V. Nelson and Richard A. Husseini, Baker & Botts, L.L.P., Houston, Texas, were on the appellee's response in opposition to the motion of the United States to dismiss its own appeal without prejudice for lack of jurisdiction.
 Loretta C. Argrett, Assistant Attorney General, Gary R. Allen, David I. Pincus and Charles Bricken, Attorneys, Tax Division, Department of Justice, Washington, D.C., were on the motion of the United States to dismiss its own appeal without prejudice for lack of jurisdiction.
 ON MOTION
 Before NEWMAN, CLEVENGER, and RADER, Circuit Judges.
 Order of the court filed by Circuit Judge RADAR. Dissenting order filed by Circuit Judge NEWMAN.
 ORDER
 RADER, Circuit Judge.
 
 
 1
 The United States moves to dismiss its appeal because the Court of Federal Claims improperly granted certification pursuant to RCFC 54(b). Houston Industries Incorporated and Subsidiaries (HII) opposes. The United States replies. Because the trial court's partial summary judgment was not a final disposition of one or more claims, this court grants the United States' motion to dismiss.
 
 BACKGROUND
 
 2
 HII operates a public utility, Houston Lighting and Power Company (HL & P), that provides electrical service to customers in the Texas gulf coast region. Each month, HL & P includes in its bills for electrical service an amount designed to compensate for recoverable fuel costs incurred. Under the regulations of the Public Utility Commission of Texas (PUC), HL & P must repay fuel cost overrecoveries to its customers either through direct refund, credit to future bills, or offset against underrecoveries. In 1983 and 1984, HL & P collected cumulative fuel cost overrecoveries of $20,942,090 and $77,361,286, respectively. Following the recommendation of the PUC examiner, HL & P refunded $72,743,791 to its customers of record in the months of August through December 1984 by issuing a credit to the bills of each of these customers. In 1985, HL & P refunded an additional amount of $147,911,623 by remitting checks to each customer.[1]
 
 
 3
 In its federal corporate income tax returns for the taxable years 1983 and 1984, HII did not include as income the amount of fuel cost overrecoveries for either of those years. Additionally, HII deducted interest liability accrued on the overrecovery balance. The Internal Revenue Service (IRS) subsequently assessed HII with deficiencies based in part on IRS's inclusion of the fuel cost overrecoveries as income and the denial of HII's deduction of its interest liability on the overrecovery balance. In July 1990, HII timely filed claims for refund for the 1983 and 1984 tax years with the IRS District Director in Houston, Texas. HII based its claims for refund on the fuel cost overrecoveries, credit stemming from the modification of HL & P's W.A. Parrish coal plant, and research and development credit. On June 27, 1991, the District Director allowed certain of HII's claims, disallowed others, and failed to formally act on HII's claims for refund based on the fuel cost overrecoveries. HII executed a Waiver of Statutory Notice of Claim Disallowance on July 19, 1991. On May 20, 1992, HII filed a second claim for refund for the 1984 tax year based on the carryover of limitation and investment credits. IRS took no action with respect to that claim.
 
 
 4
 On November 5, 1991, HII brought an action in the Court of Federal Claims for the refund of income taxes and interest in accordance with the claims for refund filed in 1990. HII amended its complaint on January 5, 1993 to incorporate the second claim for refund filed in 1992. The amended complaint consisted of six counts: (1) fuel cost overrecoveries for the 1983 tax year; (2) coal plant modification credit for the 1983 tax year; (3) fuel cost overrecoveries for the 1984 tax year; (4) research and development credit for the 1984 tax year; (5) investment credit carryover for the 1984 tax year; and (6) limitation credit carryovers for the 1984 tax year. In sum, HII alleged overrecoveries and sought various tax credits for the 1983 tax year and for the 1984 tax year.
 
 
 5
 On October 11, 1994, the Court of Federal Claims granted partial summary judgment on Counts 1 and 3 in favor of HII. Thus, the trial court decided the overrecovery issues for 1983 and 1984. The trial court also requested that the parties file a joint status report concerning whether a RCFC 54(b) partial judgment was appropriate.
 
 
 6
 The parties filed a joint status report on November 22, 1994. HII argued that RCFC 54(b) certification was appropriate; the United States argued that it was not. HII noted that its taxable income for 1983 and 1984 had been "definitively determined" in the court's order and that the amount of taxable income would not be affected by the determination of HII's remaining claims for tax credits. HII stated that "none of the facts or legal principles necessary to resolve the Taxable Income claim have any connection with the Tax Credit claims that remain unresolved." Thus, HII argued that the court should enter a RCFC 54(b) judgment because the subsequent resolution of the tax credit issues would result in either an additional refund for HII or a judgment for the United States, neither of which would affect the RCFC 54(b) judgment.
 
 
 7
 The United States responded that HII's tax liability for a particular tax year constituted a single claim and argued that RCFC 54(b) did not authorize the court to enter a final judgment when all issues concerning the amount of the tax refund for a single year had not been decided.
 
 
 8
 At the direction of the trial court, the parties filed a joint stipulation on February 15, 1995:
 
 
 9
 Pursuant to the opinion issued by this Court in this case on October 11, 1994 ... and the Court's preliminary conclusion at the November 29, 1994 hearing that a partial judgment pursuant to RCFC 54(b) should be entered in respect of the Opinion, Plaintiff and Defendant, by their respective undersigned counsel, file this Stipulation.
 
 
 10
 The parties stipulate and agree that, should the Court enter such partial judgment, the amount of such partial judgment in favor of Plaintiff should be $2,806,149.73 for 1983, and $79,682,109.11 for 1984, plus interest on both amounts as provided by law from the date of payment on July 5, 1990.
 
 
 11
 By so stipulating, Defendant does not waive its right to appeal the partial judgment so entered, nor does Defendant waive its right to contend that entry of partial judgment pursuant to RCFC 54(b) is improper in the above-captioned case.
 
 
 12
 On February 16, 1995, stating only that there was "no just cause for delay," the trial court directed entry of judgment under RCFC 54(b) in accordance with the joint stipulation. Judgment was entered on February 21, 1995. The United States filed a notice of appeal with this court and now seeks to dismiss its appeal on the ground that the order was improperly certified.
 
 DISCUSSION
 
 13
 The question is whether all issues affecting a tax refund for a single tax year must be litigated before judgment may be entered on a "claim" pursuant to RCFC 54(b). In pertinent part, RCFC 54(b) provides:
 
 
 14
 When more than one claim for relief is presented in an action, whether as a claim, counterclaim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.[2]
 
 
 15
 This court reviews a Rule 54(b) certification to determine (1) whether the judgment is final with respect to one or more claims and (2) whether the trial court properly concluded that there was no just reason for delay. W.L. Gore & Assocs., Inc. v. International Medical Prosthetics Research Assocs., Inc., 975 F.2d 858, 861-62, 24 USPQ2d 1195, 1197-98 (Fed.Cir.1992).
 
 
 16
 The requirement of a final disposition of a claim is mandatory and is not a matter of discretion. W.L. Gore, 975 F.2d at 862, 24 USPQ2d at 1198. A judgment is final for Rule 54(b) purposes when it is "an ultimate disposition of an individual claim entered in the course of a multiple claims action." Sears, Roebuck & Co. v. Mackey, 351 U.S. 427, 436, 76 S.Ct. 895, 900, 100 L.Ed. 1297 (1956).
 
 
 17
 The United States argues that the judgment was improperly certified as final under RCFC 54(b) because the Court of Federal Claims did not conclusively determine HII's income tax liability for at least one taxable year. The United States contends that HII's tax liability for a particular year creates a single claim and that all issues affecting HII's tax refund for a single year must be litigated before entry of a RCFC 54(b) judgment. The United States cites Commissioner v. Sunnen, 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898 (1948), which states:
 
 
 18
 Income taxes are levied on an annual basis. Each year is the origin of a new liability and of a separate cause of action. Thus if a claim of liability or non-liability relating to a particular tax year is litigated, a judgment on the merits is res judicata as to any subsequent proceeding involving the same claim and the same tax year.
 
 
 19
 333 U.S. at 598 (citations omitted).
 
 
 20
 HII responds that while all issues pertaining to a single tax year may comprise a single claim for res judicata purposes, the definition of a claim under Rule 54(b) is "substantially more liberal." See Olympia Hotels Corp. v. Johnson Wax Dev. Corp., 908 F.2d 1363, 1367-68 (7th Cir.1990) (res judicata status of two claims is not conclusive for Rule 54(b) determination). HII argues that an issue constitutes a Rule 54(b) claim if the facts and legal theory underlying the issue are distinct from the facts and legal theories underlying the remaining unresolved issues.[3]
 
 
 21
 HII's argument is not persuasive for two reasons. First, it confuses the requirement of finality with the factors underlying the trial court's determination of whether just cause for delay exists. Second, in order for Rule 54(b) to apply, the judgment must be final with respect to one or more claims. The resolution of individual issues within a claim does not satisfy the requirements of Rule 54(b). Compare Liberty Mut. Ins. Co. v. Wetzel, 424 U.S. 737, 742-43, 96 S.Ct. 1202, 1205-06, 47 L.Ed.2d 435 (1976) (entry of judgment under Rule 54(b) was not proper where district court determined issue of liability in employment discrimination claim but requests for relief, including damages, remained).
 
 
 22
 Accordingly, we must consider whether the determination of a tax refund for a particular tax year creates a single "claim" under Rule 54(b). There is little case law to guide the court in this regard. The Claims Court considered the issue in Favell v. United States, 22 Cl.Ct. 132 (1990). In that case, the Claims Court denied the plaintiffs' motion for the entry of a Rule 54(b) judgment, stating:
 
 
 23
 In the case at bar, the claim at issue for each taxpayer appears to be whether or not a given plaintiff is entitled to a tax refund. Resolution of the income allocation issue is only one of the legal considerations which are necessary to decide if any of the plaintiffs are entitled to a money judgment in the form of a tax refund. Therefore, review of the income allocation issue by an appellate reviewing authority can only resolve a portion of the refund claim and cannot qualify for finality under Rule 54(b).
 
 
 24
 Favell, 22 Cl.Ct. at 141. Thus, the Claims Court held that the partial summary judgment that resolved the income allocation issue disposed of less than all of the tax refund "claim" and was not a final judgment on an independent claim for relief. Id.
 
 
 25
 We agree with the Claims Court's analysis in Favell. We are not persuaded that a ruling in a tax case on one but not all of the issues pertaining to a tax year can ever constitute a separate claim. Although the Supreme Court's opinion in Sunnen concerns the application of the doctrine of res judicata and is not directly on point, we cannot ignore the Court's instruction that each tax year is "the origin of a new liability and of a separate cause of action." Sunnen, 333 U.S. at 598, 68 S.Ct. at 719. We note that at least one other circuit has interpreted Sunnen to stand for the proposition that "[the] total income tax liability for each taxable year constitutes a single, unified cause of action, regardless of the variety of contested issues and points that may bear on the final computation." Finley v. United States, 612 F.2d 166, 170 (5th Cir.1980). In the present case, the judgment deciding the overrecovery issues for both years resolved only a portion of HII's refund claims for 1983 and 1984. Thus, it was error for the Court of Federal Claims to certify the order pursuant to RCFC 54(b) when HII's tax liability and the amount of its tax refund were not finally determined for either the 1983 or the 1984 tax year. Because the order is not appealable, we need not reach the question whether the trial court's failure to specify its reasons for RCFC 54(b) certification was an abuse of discretion.
 
 CONCLUSION
 
 26
 We conclude that it was error for the Court of Federal Claims to certify the order pursuant to RCFC 54(b) when HII's tax liability and the amount of its tax refund were not finally determined for either the 1983 or the 1984 tax year.
 
 
 27
 Accordingly,
 
 IT IS ORDERED THAT:
 
 28
 (1) The United States' motion to dismiss is granted.
 
 
 29
 (2) Each side shall bear its own costs.
 
 
 30
 PAULINE NEWMAN, Circuit Judge, dissenting.
 
 
 31
 The Court of Federal Claims did not abuse its discretion in entering partial final judgment pursuant to RCFC 54(b).[1] It is inappropriate for this court to reject that action absent clear abuse of judicial discretion.
 
 
 32
 This is not a certified interlocutory appeal, but a final judgment, entered upon reasoned determination by the Court of Federal Claims that the issue here appealed was severable from the remaining issues relating to these tax years. Such a decision is consigned to the district court's discretion and, as in this case, depends on the nature of the issues.
 
 
 33
 There may well be circumstances in which it would be so clearly inappropriate to separate issues, whether in a tax case or any other, that we would deem it an abuse of the trial court's discretion to have entered partial final judgment under Rule 54(b). However, this court does not so find in this case, but instead enters a blanket rule that there can never be partial final judgment in a tax case. Precedent does not so require, and I can discern no overall benefit to removing the discretion of the Court of Federal Claims in tax cases.
 
 
 34
 The claim for which final judgment was entered has been fully litigated, now over a year ago. The other claims await disposition. The Court of Federal Claims determined that there is no need for further delay, a determination within the court's discretion. No clear error of fact or law has been pointed to by the government. It is inappropriate, absent a showing of abuse of the trial judge's discretion, for this court to overturn that court's action.
 
 
 35
 Today's order is far-reaching, for it does not depend on the facts of this or any particular case. The Federal Circuit now holds that there shall never be a partial final judgment on a completely litigated and self-contained tax claim, when there remain other, undecided claims for that tax year. It is contrary to the fundamental liberating purposes of Rule 54(b) to take so rigorous a position for any specific body of law. The history of Rule 54(b) shows the public purpose of relaxation of the common law's "unitary principle," see Sears, Roebuck & Co. v. Mackey, 351 U.S. 427, 76 S.Ct. 895, 100 L.Ed. 1297 (1956) (summarizing history), in order to provide flexibility to courts and to serve the needs of litigants. This flexibility was achieved by committing to the sound discretion of the district court the determination of when such a partial final judgment may be entered. As the Court described it:
 
 
 36
 To meet the demonstrated need for flexibility, the District Court is used as a "dispatcher." It is permitted to determine, in the first instance, the appropriate time when each "final decision" upon "one or more but less than all" of the claims in a multiple claims action is ready for appeal. This arrangement already has lent welcome certainty to the appellate procedure. Its "negative effect" has met with uniform approval. The effect so referred to is the rule's specific requirement that for "one or more but less than all" multiple claims to become appealable, the District Court must make both "an express determination that there is no just reason for delay" and "an express direction for the entry of judgment."
 
 
 37
 Sears, 351 U.S. at 435-36, 76 S.Ct. at 899-900.
 
 
 38
 In the field of tax litigation, there are indeed considerations peculiar to the unitary nature of the annual tax. However, precedent does not bar the application of Rule 54(b) when the circumstances warrant. The government argues that Rule 54(b) will permit a taxpayer to move to another court some of its tax claims for the same year, or engage in other ingenious and unlikely procedures; indeed, I marvel at the creative horrors that are foretold should Rule 54(b) be permitted to play its standard role. The government appears to confuse the matter of judicial power to enter partial final judgment, a power not within our authority to eliminate, and the trial court's exercise of discretion. As the court explained in Olympia Hotels Corp. v. Johnson Wax Dev. Corp., 908 F.2d 1363 (7th Cir.1990):
 
 
 39
 If the claims are legally distinct and involve at least some separate facts, the district court has the power to enter a Rule 54(b) judgment, and it becomes a matter of the district judge's discretion, reviewable for but only for abuse thereof, whether to exercise the power and enter such a judgment.
 
 
 40
 908 F.2d at 1368.
 
 
 41
 This court's precedent fully supports the availability of Rule 54(b) in tax cases as in other cases. See American Broadcasting Co. v. United States, 851 F.2d 329 (Fed.Cir.1988) (the Rule 54(b) judgment related to investment tax credits for third-party films, while credits for in-house films were not yet decided). Although the Court of Federal Claims itself has not been entirely consistent, the Federal Circuit heretofore recognized the role of Rule 54(b) in facilitating the litigation process. See W.L. Gore & Assocs., Inc. v. Int'l Medical Prosthetics Research Assocs., Inc., 975 F.2d 858, 864 (Fed.Cir.1992) ("the factual relatedness of separate claims for relief is one of the factors a district court considers in deciding whether to exercise its discretion to certify an appeal").
 
 
 42
 The Court of Federal Claims found that there is no factual connection between the counts that were the subject of the Rule 54(b) judgment and the remaining counts, and no commonality of legal theory. Indeed, the government does not charge that there was an abuse of judicial discretion in the holding of the Court of Federal Claims that there is no just reason for delay. This discretionary ruling is in the primary hands of the trial judge; there is no basis for our eliminating this discretion in tax cases in the Court of Federal Claims. Thus, respectfully, I dissent.
 
 
 
 [1]
 This amount included fuel cost overrecoveries for the months of January through April 1985
 
 
 [2]
 The language of RCFC 54(b) is substantially similar to that of Fed.R.Civ.P. 54(b)
 
 
 [3]
 HII suggests that this court "has assumed, without comment, that the issue resolved in the Rule 54(b) judgment before it constituted a Rule 54(b) claim and that there could be multiple Rule 54(b) 'claims' pertaining to a single tax year.' " See American Broadcasting Co. v. United States, 851 F.2d 329 (Fed.Cir.1988). However, when an issue is not argued or considered in a decision, such decision is not precedent on that issue. National Cable Television Assoc., Inc. v. American Cinema Editors, Inc., 937 F.2d 1572, 1581 (Fed.Cir.1991) (citing Webster v. Fall, 266 U.S. 507, 45 S.Ct. 148, 69 L.Ed. 411 (1925))
 
 
 [1]
 Rule 54(b) of the Court of Federal Claims tracks Rule 54(b) of the Federal Rules, whose precedent is here applied